A98A2231, A98A2232. WOODHULL CORPORATION et al.
v. SAIBABA CORPORATION et al.; and vice versa.
(507 SE2d 493)

ELDRIDGE, Judge.

Bharat Gandhi and Lila Gandhi and their corporation, Saibaba Corporation (collectively "Gandhi") negotiated with Merritt W. Dixon III, the Dixon Children's Trust, and Woodhull Corporation (collectively "Dixon") for the purchase of a motel at I-95 and Highway 341 in Glynn County, Georgia. Gandhi first contacted Dixon regarding the purchase in February 1995. Early in the negotiation, Gandhi learned that he could not obtain financing to purchase the motel. Consequently as part of the purchase agreement, Gandhi had Dixon refinance the loan on the motel so that Gandhi could assume it as part of the purchase agreement. Since Dixon had prior dealings with Nomura Asset Capital Corporation ("Nomura"), it was agreed that Dixon would get the loan from Nomura and that Gandhi would assume the loan. Gandhi wanted the assumable loan in the amount of $1,650,000, and he would assume the loan at the closing of the motel purchase by him.

However, there were certain agreed-upon restrictions on the new loan that had not been on the original loan, because it was a non-recourse loan. As a non-recourse loan, any early payoff prior to

maturity had substantial penalties. It was understood by the parties prior to the Nomura loan that Nomura would assign the loan to another lender within a short time after the refinancing was made. To obtain the Nomura loan, Dixon was required to: (1) assign all interest in the property to Brunswick Properties, LLC, which was solely owned by Dixon, individually; (2) reroof with a new cover a portion of the existing roof at a cost of $43,000; and (3) pay $15,000 for loan processing fees, legal fees, and other costs for obtaining the loan. Nomura required that prior to the loan closing Dixon pre-pay $84,083 into escrow to ensure that such special conditions were carried out.

Gandhi negotiated many of the contract terms himself, and the contract was in the final stages of finalization in May 1995. Gandhi's counsel reviewed the written agreement, drafted changes, and negotiated other terms. On June 16, 1995, the parties executed the Agreement of Sale and Purchase. Under the contract, Gandhi paid Dixon $100,000 for pre-paid closing costs and fees. The actual closing costs for the loan were $140,000-$150,000. One of the terms of the contract was that Gandhi would assume the Nomura loan immediately after Dixon obtained the loan, i.e., within 20 days of the loan closing. There were two reasons for the immediate assumption of the loan: (1) Dixon was not to carry the loan on the due date of the first loan payment, which was 30 days after the loan closing; and (2) after the loan was assigned by Nomura, the parties would be unfamiliar with the terms for assumption by Gandhi. On December 26, 1995, Dixon closed the Nomura loan and notified Gandhi. On March 1, 1996, Nomura assigned the loan to Pacific Mutual Insurance Company ("Pacific").

Although Gandhi knew that the new loan was in place by January 10, 1996, Gandhi failed to take steps to assume the loan. In fact, Gandhi made no contact with Nomura regarding the loan assumption prior to the due date for the first loan payment and had not contacted Nomura by August 21, 1996. Gandhi refused assistance in assuming the loan.

Gandhi disputed responsibility for the cost to partially reroof the motel as required as a loan condition by Nomura and threatened suit. Gandhi made no effort to seek the assumption of the loan from Pacific. Gandhi never was approved to assume the Nomura loan. In fact, Gandhi could not have qualified for the loan assumption, because he lacked hotel/motel management experience and the financial strength for a loan of this size. Gandhi never sought to assume the loan, never was rejected as an unacceptable credit risk by either Nomura or Pacific, and never sought alternative financing.

By March 7, 1996, Gandhi knew that he could not qualify to assume the Nomura loan. After such date, Gandhi sought to negotiate a new agreement, including a lease of the motel, which was

rejected by Dixon.

Dixon had to make payments on the mortgage at the rate of $15,000 a month, which affected the purchase price under the contract. Gandhi did not assume the loan and close the purchase within the 30 days of the loan closing, so that on May 13, 1996, Dixon's attorney demanded that Gandhi take immediate steps to close. Gandhi continued to dicker over different terms, including the price, and did not close the purchase. Finally, Gandhi began to communicate with Pacific regarding the loan assumption, and Pacific placed various conditions precedent to the assumption of the loan. However, as of August 27, 1996, Gandhi had not met the conditions of the Agreement of Sale and Purchase: (1) an opinion letter; (2) required financial information on Saibaba Corporation; (3) assumption agreement from Pacific; (4) executed environmental indemnity statement; and (5) proof of current insurance. Pacific placed a new requirement for the assumption that Dixon execute a conveyance of title of the property to Gandhi prior to Pacific granting the loan assumption.

On August 30, 1996, Dixon gave Gandhi a written notice of Gandhi's default and breach of contract from the failure to assume the loan and to close on the purchase of the property. Under paragraph 15.1 of the contract, Dixon retained as liquidated damages the pre-paid closing costs.

Gandhi sued to recover the pre-paid closing costs and for specific performance. The defendants answered and filed a complaint to quiet title. The parties filed cross-motions for summary judgment. The trial court granted in part and denied in part Dixon's motion for summary judgment and granted summary judgment to Gandhi allowing the recovery of the pre-paid closing costs and pre-judgment interest. Both parties appeal.

### Case No. A98A2231

1. Dixon's enumeration of errors states in six different ways why the trial court's grant of summary judgment to Gandhi and partial denial of his motion were error. We agree that the trial court erred in granting Gandhi's motion for summary judgment and in failing to grant Dixon's partial summary judgment as to the recovery of the pre-paid closing costs as liquidated damages by Dixon under the contract.

(a) Section 6.1 of the written contract provided: *"Closing Date. The closing shall be held . . . on the date which is within twenty (20) days after the closing of Nomura Financing."* (Emphasis supplied.) Section 2.1, Purchase Price, provided that the total purchase price was $1,910,000, consisting of the Nomura loan of $1,650,000, $100,000 pre-paid closing costs, and $160,000 paid at closing. The

only way in which such figures would remain the same would be for the closing to take place within the 20 days following the loan closing and prior to the first loan payment being due; otherwise, the loan balance would change. However, the contract anticipated that the payment at closing would increase if the amount of the loan financed was less than $1,650,000, not that the loan balance was reduced. Further, any loan payments required to be paid by Dixon would mean that almost all of the $15,000 monthly payments would be for interest, with little reduction of principal, and that would be unrecoverable by Dixon. All due diligence, inspection, operations, or cure of title or other defects were to occur prior to the loan finance closing. Further, the loan assumption needed to take place while Nomura still had the loan and the loan assumption conditions were known. While the contract does not expressly state that time is of the essence, all the terms of the contract when read together clearly express such intent of the parties, so that the only reasonable construction is that the intent of the parties was that time was of the essence. Under OCGA § 13-2-2 (9), "[t]ime is not generally of the essence of a contract; but, by express stipulation or reasonable construction, it may become so." Where Dixon would incur $15,000 in monthly payments to Nomura that were unrecoverable, and where only $160,000 was payable at closing, time was intended to be of the essence. Clearly, the only reasonable construction of the agreement was that time was of the essence, because the written agreement contained the condition for the closing of the motel purchase 20 days after the loan closing, and the parties did not intend to cause unrecoverable damages from the mortgage payments to be suffered by Dixon through the intentional conduct of Gandhi, who was not subject to damages under the contract other than the liquidated damages provided under the contract. See *Evans v. Brown*, 196 Ga. 634, 638 (27 SE2d 300) (1943); *Watkins v. Hendricks*, 137 Ga. 330, 331 (1) (73 SE 581) (1912). "Where [a contract for sale] clearly fixes by unambiguous language a time for performance, and where there is no evidence tending to show that the parties did not intend that time should be of the essence of the contract, but the contract and the surrounding circumstances manifestly show that the parties intended that time should be of such essence, the court may so rule as a matter of law." (Citations omitted.) *Henry Cotton Mills v. Shoenig & Co.*, 33 Ga. App. 467, 469-470 (1) (127 SE 238) (1925); see also *Sewell v. C. I. T. Corp.*, 43 Ga. App. 676 (160 SE 99) (1931). This was a contract where time was of the essence to assume the loan and close the purchase after the loan closing, but which provided a reasonable time to inspect and carry out the contract provisions prior to the loan closing, because harm could accrue to the parties only after the loan closing.

(b) Further, even if the contract is construed to mean that the closing of the sale of the motel must occur within a *reasonable time* after the loan closing, when Dixon is suffering $15,000 per month in unrecoverable mortgage payments, a delay of eight months is patently unreasonable, because failure to close prior to August resulted in $120,000 in unrecoverable mortgage payments and was unreasonable. See *Alabama Constr. Co. v. Continental Car &c. Co.*, 131 Ga. 365 (62 SE 160) (1908); *Cassville-White Assoc. v. Bartow Assoc.*, 150 Ga. App. 561 (258 SE2d 175) (1979). Thus, where Dixon had to pay $120,000 to Nomura and Pacific, as a matter of law Gandhi's delay of eight months was clearly and palpably unreasonable delay and breached the contract.

(c) When the contract is construed as calling for time is of the essence, and if Dixon's conduct could be deemed as a waiver, then a reasonable time to close must be construed. *McCullough v. McCullough*, 263 Ga. 794 (439 SE2d 486) (1994); *Edwards v. McTyre*, 246 Ga. 302, 303 (3) (271 SE2d 205) (1980); *King v. Lipsey*, 142 Ga. 832 (83 SE 957) (1914). However, under the facts of this case, where Dixon is suffering substantial, unrecoverable damages incurred on Gandhi's behalf under the contract and caused by Gandhi's delay in closing, failure to perform for eight months is patently unreasonable; therefore, Gandhi breached the contract on or before August 1996 by not assuming the loan and closing.

Thus, under any construction of the contract or interpretation of the undisputed facts, Gandhi breached the contract, and liquidated damages in the amount of the pre-paid closing costs partly compensated Dixon for the $60,000 in unrecovered refinance closing costs, $120,000 in mortgage payments, the mortgage with a pre-payment clause, and legal expenses. The trial court erred in granting summary judgment to Gandhi and in denying partial summary judgment to Dixon on his entitlement to the liquidated damages.

2. Dixon enumerated as error the trial court's grant of summary judgment against his complaint alleging fraud in the inducement. We do not agree.

Fraud in the inducement, or inceptive fraud to enter into a contract, provides the remedy of rescission and recovery of any additional damages after repayment of the contract payment. OCGA § 13-4-60; *Ben Farmer Realty Co. v. Woodard*, 212 Ga. App. 74 (441 SE2d 421) (1994). Dixon "could not recover for both breach of contract and fraud if the fraud related purely to the inducement to enter into the contract. . . . Damages [that arise from different fraud] for that reason would not be duplicative of those for breach of contract." *Long v. Marion*, 182 Ga. App. 361, 366 (5) (355 SE2d 711), aff'd, 257 Ga. 431 (360 SE2d 255) (1987). In this case, Dixon affirmed the contract and sued in tort for damages. Generally, false representations that

induce the party to enter into the contract are merged through the contract merger language, but since the same misrepresentations were made as part of the contract, there was no merger. See *Orion Capital Partners, L.P. v. Westinghouse Elec. Corp.*, 223 Ga. App. 539, 541-543 (2) (478 SE2d 382) (1996); *Flair Fashions v. SW CR Eisenhower Drive*, 207 Ga. App. 78 (427 SE2d 56) (1993). If the contract action for fraud is waived, then the party can sue in tort for fraud. *Hines v. Good Housekeeping Shop*, 161 Ga. App. 318, 321 (8) (291 SE2d 238) (1982); *Hartsfield Co. v. Newlin*, 49 Ga. App. 546-547 (176 SE 516) (1934).

Where the false representations to induce the contract also go to the essence of the contract and are part of the contract, such false representations are part of any tort action for fraud when the contract is affirmed. *Hines v. Good Housekeeping Shop*, supra at 321; see also *Ben Farmer Realty Co. v. Woodard*, supra.

In this case, the alleged false representations as to Gandhi's financial solvency were made to induce Dixon to enter into the contract, but also became terms of the actual contract, inducing Dixon to refinance the loan at substantial loan closing costs so that it could be assumed by Gandhi. Thus, the false representations became part of the contract consideration to induce Dixon to change his position to his detriment by refinancing the loan into a non-recourse loan with pre-payment penalties. The evidence that Dixon undertook to refinance on terms requested by Gandhi and obtained a loan that was believed to be assumable by Gandhi and that was disadvantageous to Dixon if he retained it was some evidence of justifiable reliance, which created a jury question. Thus, the misrepresentations became an integral part of the contract and a consideration, so that there was no merger or waiver.

However, the liquidated damages provision of the contract that Dixon affirmed prevents him from recovering in tort any damages that he could have recovered in contract, because he waived such contract damages by binding himself contractually to the liquidated damages only. Dixon is not permitted a double recovery of the same damages for the same wrong. He is entitled to only one satisfaction of the same damages, in either contract or tort. *Saunders, Stuckey & Mullis, Inc. v. Citizens Bank &c. Co.*, 265 Ga. 453, 456 (458 SE2d 337) (1995); *City of Atlanta v. J. A. Jones Constr. Co.*, 260 Ga. 658, 659 (2) (398 SE2d 369) (1991); *Georgia Society of Plastic Surgeons v. Anderson*, 257 Ga. 710, 714-715 (4) (363 SE2d 140) (1987); *Nalley Northside Chevrolet v. Herring*, 215 Ga. App. 185, 188-189 (5) (450 SE2d 452) (1994); *Mathis v. Melaver, Inc.*, 206 Ga. App. 392, 393 (425 SE2d 401) (1992).

Where, for the same damages, there exists an action in contract and tort, i.e., fraud, the plaintiff must elect between the causes of

action and cannot recover in both. *Black & White Constr. Co. v. Bolden Contractors*, 187 Ga. App. 805, 808 (3) (371 SE2d 421) (1988); *Hines v. Good Housekeeping Shop*, supra at 321-322 (8). However, where damages are not duplicitous and where "separate transactions supporting its recovery under each of the contract and tort theories," there can be recovery of separate damages under each theory; but such is not the case here. *Henderson v. Glen Oak, Inc.*, 256 Ga. 619 (351 SE2d 640) (1987); see also *Long v. Marion*, 182 Ga. App. at 366. Under the contract that he affirmed, Dixon agreed to accept liquidated damages of the pre-paid closing costs in lieu of any other contract damages that were provable. This bars further recovery for the same damages, in either contract or tort. See *City of Warner Robins v. Holt*, 220 Ga. App. 794, 796-797 (2) (470 SE2d 238) (1996).

However, consequential damages and punitive damages, not recoverable in a contract action, would be authorized in this tort action if proven. OCGA §§ 13-6-2; 13-6-8; 51-12-1; *Quigley v. Jones*, 255 Ga. 33 (334 SE2d 664) (1985); *Bill Parker & Assoc. v. Rahr*, 216 Ga. App. 838, 841 (4) (456 SE2d 221) (1995); *Long v. Marion*, 182 Ga. App. at 366; *Dept. of Transp. v. Arapaho Constr.*, 180 Ga. App. 341, 345-346 (4), (5) (349 SE2d 196) (1986), aff'd, 257 Ga. 269 (357 SE2d 593) (1987). In this case, there is no evidence in the record of any consequential or special damages other than the same actual damages which were recoverable in a contract action and which were satisfied under the contract by liquidated damages. See generally OCGA §§ 13-6-2; 13-6-8; *Hammond v. City of Warner Robins*, 224 Ga. App. 684, 689-690 (1) (482 SE2d 422) (1997); *Phillips v. Leisure Auto. Corp.*, 223 Ga. App. 225, 226 (1) (477 SE2d 380) (1996); *Citizens Bank v. Johnson*, 191 Ga. App. 155, 158 (2) (381 SE2d 121) (1989); *Rodrigue v. Mendenhall*, 145 Ga. App. 666, 668 (2) (244 SE2d 598) (1978).

Unless Dixon could show actual tort damages other than the contract damages directly flowing from the alleged fraud, which have been satisfied, then actual damages have not been shown, and nominal damages are not recoverable. "The rule is that an award of nominal damages for fraud is improper, as 'to establish a cause of action for fraud, a party must show that actual damages, not simply nominal damages, flowed from the fraud alleged.' *Glynn County Federal Employees Credit Union v. Peagler*, 256 Ga. 342, 344 (2) (348 SE2d 628) (1986). Moreover, a party is not entitled to punitive damages if the party fails to set out a cause of action in tort. Id. (4) at 344-345." *Stiefel v. Schick*, 260 Ga. 638, 639 (2) (398 SE2d 194) (1990). Consequently, the trial court did not err in granting partial summary judgment to Gandhi, because Dixon failed on his motion for summary judgment to provide some evidence giving rise to a material issue of fact that he had suffered unsatisfied actual damages. See OCGA § 9-

11-56 (e); *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

*Case No. A98A2232*

3. This enumeration of error is controlled by Division 1, supra, which found that Gandhi, not Dixon breached the contract. Therefore, it is not necessary to determine if the trial court was correct for the reason raised in this enumeration of error.

*The grant of plaintiffs' summary judgment as to the defendants' breach of contract is reversed. The denial of defendants' summary judgment as to plaintiffs' breach of contract and liability for liquidated damages is reversed. The grant of partial summary judgment that the defendants are limited to liquidated damages is affirmed in Case No. A98A2231. The grant of partial summary judgment to defendants is affirmed in Case No. A98A2232. McMurray, P. J., and Blackburn, J., concur.*

DECIDED OCTOBER 2, 1998 —
RECONSIDERATION DENIED OCTOBER 14, 1998 —

*Savage, Herndon & Turner, Brent J. Savage, Robert B. Turner, Robert S. Kraeuter*, for appellants.
*Duffy, Feemster & Lewis, George L. Lewis*, for appellees.