## A06A2457. PEACHSTATE DEVELOPERS, LLC v. GREYFIELD RESOURCES, INC.

### (644 SE2d 324)

BARNES, Chief Judge.

Peachstate Developers, LLC ("Peachstate"), appeals the grant of summary judgment to Greyfield Resources, Inc. ("Greyfield"), on Peachstate's claims against Greyfield for breach of a contract in which Peachstate was to purchase certain real property from Greyfield for $200,000. Peachstate contends the trial court erred by finding that the parties intended that time should be of the essence and also erred by denying its motion for summary judgment.

For the reasons stated below we agree that the trial court erred by granting summary judgment to Greyfield and reverse that portion of the order. Further, also for the reasons stated below, we find that the trial court did not err by denying Peachstate's motion for summary judgment, and, thus, affirm the denial of that motion.

This dispute arose after a contract for the purchase and sale of land did not close. The contract provision on closing stated that "[u]nless otherwise agreed in writing by the parties, closing shall take place thirty days (30) after written confirmation of sewage availability is received by the Purchaser from the City of East Point or December 31, 2002, which ever is earlier." The parties do not dispute that no provision in the contract stated that time would be of the essence. Although containing provisions on default, the contract does not define that term or specify what would occur if the contract did not close on the closing date. The contract also contains a merger clause and provides that all amendments must be in writing and signed by the parties, and further provides that the "seller agrees that this contract is contingent on receiving sewer capacity/environmentals/zoning restrictions."

The sale did not close on December 31 and the parties executed an addendum to the contract, dated December 31, 2002, but signed by the parties on January 2, 2003, stating that the parties "agree that the closing date shall be within 7 days of zoning approval or March 31, 2003, whichever comes first." The addendum also provided that the purchaser would pay an additional earnest money deposit of $3,000, bringing the total earnest money to $5,000.

The sale also did not close on March 31. The parties executed another addendum, dated April 15, 2003, but signed on April 22, 2003, by the purchaser and April 23, 2003, by the seller, stating that the parties mutually agreed that the closing would occur on or before June 1, 2003. The addendum also provided for another $2,500 in earnest money, for a total of $7,500.

The sale, however, did not close by June 1, 2003, and the parties executed another addendum, dated June 4, 2003, but signed by the

parties on June 9, 2003, stating that the parties mutually agreed that the closing would occur on or before July 1, 2003. According to Greyfield, when the parties met about extending the closing date to July 1, 2003, Greyfield informed Peachstate that it was concerned that Peachstate might not close, "and that if we didn't get closed by July 1st, that we would need to get together to discuss where we go from there." Peachstate's recollection of this conversation is different. According to Peachstate, Greyfield said that if Peachstate's financing was not in place by July 1, Greyfield would be looking for an additional earnest money payment of $2,500.

The sale did not close on July 1, 2003, but, on July 10, 2003, an unsigned letter on Peachstate's letterhead was sent to Greyfield asking for a 60-day extension. Greyfield received the letter on July 15, 2003.

On July 30, 2003, Peachstate's attorney wrote Greyfield stating that on June 9, 2003 the parties discussed a further extension of the closing date and agreed that if Peachstate made another earnest money payment of $2,500, Peachstate could have another extension of the closing date. The letter further recited that Peachstate had included with its earlier letter a $2,500 check to Greyfield in exchange for a 60-day extension. According to the attorney's letter, Greyfield did not respond, but kept the money. The lawyer stated that Peachstate intended to close on the contract and purchase the property, and asked Greyfield to tell him whether it intended to honor the contract.

On August 4, 2003, Greyfield's attorney responded to the letter denying any meeting of the minds on a further extension of the closing date, stating that the contract expired on July 1, 2003, returning the $2,500 check, and advising Peachstate that it was Greyfield's position that "there is no contract" between the parties. Greyfield then treated the contract as terminated and contracted to sell the property to another buyer on July 29, 2003, for $50,000 per acre.

On August 8, 2003, Peachstate filed this action, and after discovery, both parties filed motions for summary judgment. The trial court granted Greyfield's motion, finding that the contract had terminated because, even though the contract did not specify that time was of the essence, the conduct of the parties made it so. Having found that time was of the essence in the contract, the trial court also denied Peachstate's motion for summary judgment. This appeal followed.

1. In Georgia,

[t]he standards applicable to motions for summary judgment are announced in *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). When a trial court rules on a motion

for summary judgment, the opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions therefrom most favorably toward the party opposing the motion. On appeal of the grant or denial of a motion for summary judgment, this court conducts a de novo review of the law and the evidence. Further, contract disputes are particularly well suited for adjudication by summary judgment because construction of contracts is ordinarily a matter of law for the court.

(Citations omitted.) *Overton Apparel v. Russell Corp.*, 264 Ga. App. 306, 307-308 (1) (590 SE2d 260) (2003). "Time is not generally of the essence of a contract; but, by express stipulation or reasonable construction, it may become so." OCGA § 13-2-2 (9). "[T]he mere prescribing of a certain time within which the transaction shall be closed does not necessitate a tender of the purchase price within that time." *Belk v. Nance*, 232 Ga. 264, 267 (3) (206 SE2d 449) (1974).

The parties do not dispute that no provision making time of the essence is in the contract. The trial court, however, found that the "surrounding circumstances manifestly show that the parties intended that time should be of the essence" because the parties extended the closing date on three occasions in writing, "thus manifesting an unmistakable intent that the closing date was a material and essential term of the contract." The trial court also found that Peachstate's letter, dated after the last designated closing date and asking for a further extension, also showed that the parties intended that time would be of the essence.

We find the trial court's reliance on *Woodhull Corp. v. Saibaba Corp.*, 234 Ga. App. 707, 710 (507 SE2d 493) (1998), to be misplaced. In *Woodhull*, this court found time to be of the essence because the seller "would incur $15,000 in monthly payments . . . that were unrecoverable, and . . . only $160,000 was payable at closing." Id. at 710 (1) (a). Time was also of the essence

because the written agreement contained the condition for the closing of the motel purchase 20 days after the loan closing, and the parties did not intend to cause unrecoverable damages from the mortgage payments to be suffered by [the seller] through the intentional conduct of [the purchaser], who was not subject to damages under the contract other than the liquidated damages provided under the contract.

(Citations omitted.) Id. No such unusual circumstances exist in this case. Examination of the contract shows a typical contract for the

purchase and sale of real property. Further, contrary to the trial court's determination, the conduct of the parties does not show that time was of the essence. Each time the closing date was extended it was done so after the designated closing date had come and gone without the sale being closed.

In particular, the addendum extending the March 31 closing date until June 1, 2003, was not signed by the parties until April 22 and 23, a period almost twice as long as the ten-day delay between the July 1 closing date and Peachstate's request for another extension on July 10.

> In cases involving the sale of land, courts will generally not construe time to be of the essence unless it should clearly appear that such was the intention of the parties; as, for example, by a provision that the agreement shall be void unless the act named be completed by a certain day, or by other equivalent expression.

(Punctuation and footnote omitted.) *Torgesen v. Torgesen*, 274 Ga. App. 298, 300 (1) (617 SE2d 223) (2005). There being no provision in the contract from which we can conclude that time was intended to be of the essence and the parties' conduct being inconsistent with time being of the essence, we find that the trial court erred by determining that time was of the essence in this contract.

The parties' different accounts on whether an agreement had been reached to extend the closing date past July 1, 2003, merely show that an issue of fact exists on that point.

When "time is not of the essence, either expressly or by construction, the party has a reasonable time in which to perform," and "what is a reasonable time is a matter of fact, to be determined by a jury or other factfinder under all the circumstances of the case." (Punctuation and footnotes omitted.) *Torgesen v. Torgesen*, supra, 274 Ga. App. at 300, 301 (1). Accordingly, we find that the trial court erred by granting summary judgment to Greyfield.

2. Peachstate further contends the trial court erred by denying its motion for summary judgment "because time was not of the essence in the contract and Greyfield did not provide Peachstate with notice of its intent to rescind the contract and a reasonable opportunity to close." We do not agree.

Because time was not of the essence, Greyfield could rescind the contract only by showing that, after July 1, 2003, it notified Peachstate that it would consider the contract rescinded unless Peachstate performed the contract within a fixed, reasonable time. Then, if Peachstate did not perform the contract within the time prescribed, assuming it was reasonable, Peachstate would be deemed to have

consented to the rescission. *Braddy v. Boynton*, 271 Ga. 55, 56 (518 SE2d 411) (1999). This principle has been explained as follows:

> Where time is not made of the essence by the terms of a contract for the sale of land, in order for the failure to comply by one of the parties to be tantamount to a consent to a rescission by the other party, the party seeking to rescind must give the party failing to perform a notice to the effect that he will consider the contract rescinded unless performance is made within a fixed, reasonable time. Then, if there is not performance within the time prescribed, assuming it is reasonable, the offending party will be deemed to have consented to a rescission.

(Citations omitted.) *Dev. Corp. of Ga. v. West*, 116 Ga. App. 768, 770 (159 SE2d 94) (1967) (physical precedent only).

> The rationale of this principle is that the parties have not provided for a rescission by making time of the essence, and before one party can make it of the essence he must give the other notice of a desire to rescind and give him an opportunity to comply or else be deemed to have assented to the rescission.

Id.

Thus, although the record reflects that Greyfield did not advise Peachstate of its intent to rescind the contract and give it a reasonable opportunity to close, we find that a question of fact remains over whether Peachstate intended to abandon the contract, based on Peachstate's testimony that it had advised its banker that the deal had been put on hold and had stopped soliciting financing. Moreover, even though Greyfield had contracted to sell the property to another, the record does not show that it could not honor its contract with Peachstate, if Peachstate attempted to close the sale. Thus, the trial court did not err by denying Peachstate's motion for summary judgment. The grant or denial of summary judgment will be affirmed if it is right for any reason. *Groover v. Johnston*, 277 Ga. App. 12, 17 (2) (625 SE2d 406) (2005); *Malaga Mgmt. Co. v. John Deere Co.*, 208 Ga. App. 764, 767 (5) (431 SE2d 746) (1993).

Accordingly, the grant of summary judgment to Greyfield is reversed, the denial of summary judgment to Peachstate is affirmed, and the case is remanded for further proceedings.

*Judgment affirmed in part and reversed in part. Andrews, P. J., and Bernes, J., concur.*

DECIDED MARCH 26, 2007.

*Jones & Walden, Leon S. Jones, Andrews, Knowles & Princenthal, Adam P. Princenthal, Philip M. Walden, Jr.*, for appellant.

*Perrie & Cole, Stanley E. Kreimer, Jr., C. Terry Blanton*, for appellee.