Jennifer E. **WORSHAM**, Plaintiff,

v.

**PROVIDENT COMPANIES, INC.,** and **Provident Life & Accident Insurance Company,** Defendants.

No. CIV.A.1:98CV3126RWS.

United States District Court, N.D. Georgia, Atlanta Division.

July 29, 2002.

Order Denying Reconsideration January 22, 2003.

---

David E. Tuszynski, Garland Samuel & Loeb, Betty Green Berman, Office of Betty Green Berman, Atlanta, GA, William Sims Stone, Boone & Stone, Blakely, GA, for Jennifer E. Worsham, plaintiff.

David Joel Marmins, Office of State Attorney General, H. Sanders Carter, Jr., Elizabeth Johnson Bondurant, Kenton Jones Coppage, Carter & Ansley, Atlanta, GA, for Provident Life and Accident Insurance Company, Provident Companies, Inc., defendants.

### ORDER

STORY, District Judge.

Now before the Court for consideration are Defendants' Motion for Summary Judgment [63–1], Plaintiff's Second Motion To Amend Complaint [72–1], and Defendants' Motion for Leave To File Supplement to Reply Memorandum [76–1]. As a preliminary matter, the Court **GRANTS** Defendants' Motion for Leave To File Supplement to Reply Memorandum [76–1]. After reviewing the record and considering the parties' arguments, the Court enters the following Order.

### BACKGROUND

In 1985, Plaintiff purchased a disability income policy from Provident Life & Accident Insurance Company ("Provident"), through Provident's agent, John Lagana. Provident Policy No. 6–337–657160 became effective on June 16, 1985, and was amended on June 1, 1989. The policy provided benefits in the event of a covered residual or total disability. Among the terms in the policy was an "Entire Contract" provision: "This policy with the application and attached papers is the entire contract between you and us. No change in the policy will be effective until approved by one of our officers. This approval must be noted on or attached to this policy. No agent may change this policy or waive any of its provisions." (Disability Income Policy at 13 (Pl.'s Resp. to Defs.' Mot. for Summ. J., Ex. 1).)

In April 1996, Plaintiff submitted a claim for disability benefits based on depression and job burnout she suffered in her position as a "Human Resources Consultant." Provident paid Plaintiff disability benefits from November 1995 through March 1997. After an investigation, Provident found that an independent medical examination ("IME") of Plaintiff would be appropriate. Based on the determinations of the doctors who conducted the IME of Plaintiff, Provident denied further disability benefits. Plaintiff appealed the decision and demanded that her benefits be resumed. Thereafter, Plaintiff filed this lawsuit against Provident and its parent company, Provident Companies, Inc.[1]

The Original Complaint alleged claims for breach of contract, attorneys' fees and penalty for bad faith denial of insurance claim under O.C.G.A. § 33–4–6, tort damages under O.C.G.A. § 51–12–6, and punitive damages under O.C.G.A. § 51–12–5.1. After the addition of new counsel, Plaintiff amended the complaint to abandon all of the original claims and to allege the following claims: violation of the Georgia Racketeer Influenced and Corrupt Organizations Act ("RICO"), O.C.G.A. § 16–14–4(a)–(c) (Counts I–III); fraud and deceit (Count IV); breach of covenants of good faith and fair dealing (Count V); tortious breach of contract (Count VI);[2] and tortious inter-

---

1. Provident Companies, Inc., is now known as UnumProvident Corporation.

2. The Court did not allow Plaintiff to assert this claim because Georgia law does not rec-

ference with property rights (Count VII). Defendants move for summary judgment on all of Plaintiff's claims.

Moreover, Plaintiff moves to amend the Complaint again to clarify that she intended to assert a breach of insurance contract claim. Plaintiff wishes to substitute Count V of the Amended Complaint for a new Count V alleging bad faith breach of insurance contract under O.C.G.A. § 33-4-6.

## DISCUSSION

### I. Defendants' Motion for Summary Judgment

Federal Rule of Civil Procedure 56(c) provides that a district court shall grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The applicable substantive law identifies which facts are material, and a fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

When the non-moving party has the burden of proof at trial, the movant may carry its burden at summary judgment by demonstrating the absence of an essential element of the non-moving party's claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether the movant has met this burden, the district court must view the evidence and all factual inferences in the light most favorable to the non-moving party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Clark v. Coats &*

*Clark, Inc.,* 929 F.2d 604, 606 (11th Cir. 1991).

If the movant meets this burden, the non-moving party then has the burden of showing that summary judgment is not appropriate by setting forth "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Thornton v. E.I. Du Pont De Nemours & Co.,* 22 F.3d 284, 288 (11th Cir.1994). The non-moving party cannot rely on his pleadings, but must file a response that includes other evidence showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Combs v. Plantation Patterns,* 106 F.3d 1519, 1526 (11th Cir.1997); *Isenbergh v. Knight-Ridder Newspaper Sales, Inc.,* 97 F.3d 436, 439 (11th Cir.1996). Mere conclusory allegations and assertions are insufficient to create a disputed issue of material fact. *Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1081 (11th Cir.1990); *Pelli v. Stone Savannah River Pulp & Paper Corp.,* 878 F.Supp. 1559, 1565 (S.D.Ga.1995); *Mack v. W.R. Grace Co.,* 578 F.Supp. 626, 630 (N.D.Ga.1983).

### A. Fraud and RICO Claims: Counts I–IV

In her Complaint, Plaintiff contends that Defendants' agent, John Lagana, represented to Plaintiff that Provident was a financially reliable, reputable insurance company, which would deal honestly and in good faith with her, and which would fairly and properly adjust any claims for disability benefits according to the terms of the disability policy he proposed to sell her. Plaintiff also alleges that Defendants omitted or failed to disclose material facts about the policy and Provident's intended

ognize a claim for tortious interference with

contract. (Order of Nov. 30, 1999, at 14–15.)

performance under the contract. Plaintiff further alleges that because of those representations and material omissions, she was fraudulently induced to enter into the insurance contract.

■ In Georgia, the common law tort of fraud requires five elements: (1) false representation by defendant; (2) with scienter, or knowledge of falsity; (3) with intent to deceive plaintiff or to induce plaintiff into acting or refraining from acting; (4) on which plaintiff justifiably relied; (5) with proximate cause of damages to plaintiff. *Lakeside Inv. Group, Inc. v. Allen,* 253 Ga.App. 448, 450, 559 S.E.2d 491 (2002).

■ A purchaser claiming fraud in the inducement, or inceptive fraud to enter into a contract, has an election of remedies. *Conway v. Romarion,* 252 Ga.App. 528, 530, 557 S.E.2d 54 (2001); *Ben Farmer Realty Co. v. Woodard,* 212 Ga.App. 74, 74, 441 S.E.2d 421 (1994). The first option after discovering the fraud is to rescind the contract and, after offering to restore the benefits received under the contract, to sue in tort to recover the purchase price and any additional damages from the fraud. Alternatively, the purchaser may elect to affirm the contract and sue for damages resulting from the fraud. *Conway,* 252 Ga.App. at 530, 557 S.E.2d 54; *Fann v. Mills,* 248 Ga.App. 460, 462, 546 S.E.2d 853 (2001); *Ben Farmer Realty Co.,* 212 Ga.App. at 74, 441 S.E.2d 421. Although the latter suit is an independent action in tort, it is based on the defrauded party's election to affirm the contract, and sue for damages [3] resulting from the fraud arising out of the contract. Having elected to affirm the contract, the defrauded party is bound by its terms and is subject to any defenses which may be asserted by the other party based on the terms of the contract. *Keller v. Henderson,* 248 Ga. App. 526, 528, 545 S.E.2d 705 (2001); *Ben Farmer Realty Co.,* 212 Ga.App. at 75, 441 S.E.2d 421 (citing *Mitchell v. Head,* 195 Ga.App. 427, 428, 394 S.E.2d 114 (1990), and *Am. Demolition v. Hapeville Hotel Ltd. P'ship,* 202 Ga.App. 107, 109, 413 S.E.2d 749 (1991)).

Defendants contend that the merger clause in the disability policy bars Plaintiff from asserting fraud and RICO claims in this case based on the representations made before she purchased the policy. The disability policy contains a merger clause, specifying that the "policy with the application and attached papers is the entire contract between you and us. No change in the policy will be effective until approved by one of our officers. This approval must be noted on or attached to this policy. No agent may change this policy or waive any of its provisions." (Disability Income Policy at 13 (Pl.'s Resp. to Defs.' Mot. for Summ. J., Ex. 1).)

■ In written contracts containing a merger clause, "prior or contemporaneous representations that contradict the written contract 'cannot be used to vary the terms of a valid written agreement purporting to contain the entire agreement of the parties, nor would the violation of any such alleged oral agreement amount to actionable fraud.'" *First Data POS, Inc. v. Willis,* 273 Ga. 792, 795, 546 S.E.2d 781 (2001) (quoting *Campbell v. C & S Nat'l Bank,* 202 Ga.App. 639, 640, 415 S.E.2d 193 (1992)). The Georgia Supreme Court has held that "the rational basis for [merger clauses] is that where parties enter into a final contract all prior negotiations, understandings, and agreements on the same

---

**3.** In such a tort action the defrauded purchaser may seek as damages the difference in the value of the property sold to him and its value if the property had been the same as it was represented to be. *Ben Farmer Realty Co.,* 212 Ga.App. at 74–75, 441 S.E.2d 421 (citing *Gem City Motors v. Minton,* 109 Ga.App. 842, 845–46, 137 S.E.2d 522 (1964)).

subject are merged into the final contract, and are accordingly extinguished." *Health Serv. Ctrs. v. Boddy*, 257 Ga. 378, 380, 359 S.E.2d 659 (1987); *see Alpha Kappa Psi Bldg. Corp. v. Kennedy*, 90 Ga.App. 587, 83 S.E.2d 580 (1954) (holding that there cannot be justifiable reliance upon a pre-contractual representation when there is a merger clause in a contract). . When a contract contains a merger clause, "that clause operates as a disclaimer, establishing that the written contract completely and comprehensively represents all of the parties' agreement" and thus "bars [Plaintiff] from asserting reliance on the alleged misrepresentation not contained within the contract." *Pennington v. Braxley*, 224 Ga.App. 344, 480 S.E.2d 357, 359 (1997). Thus, as a matter of law, a valid merger clause executed by two or more parties in an arm's length transaction precludes any subsequent claim of fraud based upon pre-contractual representations. *First Data*, 273 Ga. at 796, 546 S.E.2d 781.

■ Accordingly, Plaintiff is estopped from asserting reliance on any statements by Defendants' agent regarding the policy or Provident's future performance under the contract.[4] Any reliance on the pre-contractual representations would be unreasonable. Therefore, the merger clause in the disability policy bars Plaintiff's fraud claim based on Defendants' agent's pre-contractual representations.

■ In an attempt to avoid this outcome, Plaintiff argues that this is one instance in which the false representations were part of the contract, so such false representations are part of the fraud action when the contract is affirmed. Plaintiff argues that when misrepresentations are made to induce a party to enter into a contract, and those same misrepresentations become an integral part of the contract, there is no merger or waiver of the right to sue in tort for fraud. Under Georgia law, a merger clause does not necessarily prevent a claim of fraud arising from representations in the contract itself. *Conway*, 252 Ga.App. at 532, 557 S.E.2d 54; *Fann*, 248 Ga.App. at 464, 546 S.E.2d 853. "Generally, false representations that induce the party to enter into the contract are merged through the contract merger language, but [when] the same misrepresentations were made as part of the contract, there [is] no merger." *Woodhull Corp. v. Saibaba Corp.*, 234 Ga.App. 707, 711–12, 507 S.E.2d 493 (1998) (citations omitted). "Where the false representations to induce the contract also go to the essence of the contract and are part of the contract, such false representations are part of any tort action for fraud when the contract is affirmed." *Id.* (citations omitted).

■ For example, in *Conway*, the court held that the merger clause did not bar the plaintiffs' claim for fraudulent inducement because the disclosure statement, which the plaintiffs argued was the false representation that induced them to enter into the contract, was incorporated by reference into the parties' agreement. In this case, however, Plaintiff does not allege how any of the pre-contractual representations were incorporated into the contract,

---

4. Additionally, the Court notes that John Lagana's statements about the policy and Provident's reputation constitute expressions of opinion, or sales "puffing," which cannot serve as the basis for a fraud claim. *See Todd v. Martinez Paint & Body, Inc.*, 238 Ga.App. 128, 129, 517 S.E.2d 844 (1999) (holding that "a party is not justified in relying on and assuming to be true representations consisting of mere expressions of opinion, hope, expectation, puffing, and the like ..."); *Simpson Consulting, Inc. v. Barclays Bank PLC*, 227 Ga.App. 648, 650, 490 S.E.2d 184 (1997) ("Mere speculation or puffing as to a future performance ... and [s]tatements of opinion are not such factual representations that are actionable as fraud.") (citations omitted).

nor does she submit any evidence that some other representation in the contract itself is fraudulent or misleading. Thus, because the alleged misrepresentations were not incorporated into the disability policy, these are pre-contractual representations that were merged into the contract by function of the merger clause, and the merger clause bars Plaintiff's fraud claim in this case.

■ The preclusive effect of the merger clause is not limited to Plaintiff's claim for fraud. For reasons similar to those barring her fraud claim, Plaintiff's RICO claims also fail. In a recent decision, the Georgia Supreme Court held that a merger clause also forecloses RICO claims, such as the claims asserted in this case. In *First Data POS*, the plaintiffs asserted that a pre-contractual representation constituted both fraud and the RICO predicate of theft by deception. The Georgia Supreme Court held that:

> [The plaintiffs'] claim that they were deceived by First Data's pre-contractual misrepresentations, and their allegation that First Data committed theft by such deception, have no basis. Under the express terms of the [merger clause, the plaintiffs] could not have reasonably placed their reliance upon any pre-contractual representation that was not also included in the Agreement's language, and thus [plaintiffs] could not have been deceived by such pre-contractual representations. Without deception, of course, there can be neither theft by deception nor a valid RICO claim based upon theft by deception.

273 Ga. at 795, 546 S.E.2d 781; *see also Markowitz v. Wieland,* 243 Ga.App. 151, 154, 532 S.E.2d 705 (2000) (holding that purchasers' affirmance of a purchase agreement containing a merger clause precluded them from maintaining a claim for fraudulent inducement and foreclosed a claim under RICO for theft by deception).

Therefore, in this case, Plaintiff's affirmance of the disability policy with the merger clause precludes a showing of reasonable reliance; thus, Plaintiff cannot prove her RICO claims based on theft by deception. This analysis also disposes of Plaintiff's RICO claims premised on mail and wire fraud. *See Prince Heaton Enter., Inc. v. Buffalo's Franchise Concepts, Inc.,* 117 F.Supp.2d 1357, 1362 (N.D.Ga. 2000) (finding that the plaintiffs' RICO claims failed because they alleged mail fraud as a proximate cause of the RICO injury, but could not prove justifiable reliance because they waived any reliance on the defendants' representations in their agreement, which contained a merger clause).

In conclusion, because Plaintiff has affirmed the disability policy that contains a merger clause, she cannot claim to have justifiably relied on the pre-contractual representations on which she premises her fraud and RICO claims. Accordingly, the Court **GRANTS** Defendants' Motion for Summary Judgment on Plaintiff's fraud and RICO claims—Counts I, II, III, and IV of the Amended Complaint.

## B. Breach of Covenants of Good Faith and Fair Dealing: Count V

Plaintiff has moved to amend the complaint a second time to clarify that she intended Count V to assert a claim for bad faith breach of insurance contract under O.C.G.A. § 33–4–6. Because the Court allows Plaintiff to amend the Complaint to substitute a new Count V, *see infra* Part II, the Court **DENIES WITH A RIGHT TO REFILE** Defendants' Motion for Summary Judgment on Count V.

## C. Tortious Interference with Property Rights: Count VII

■ Based on the denial of disability benefits, Plaintiff may have facts to sup-

port her claim for bad faith breach of an insurance contract under O.C.G.A. § 33–4–6. However, Plaintiff's allegations do not support a claim for tortious interference with property rights. Plaintiff does not specify facts which would support a finding that Defendants owed her any duty independent of those created by the written insurance contract. *See ServiceMaster Co., L.P. v. Martin*, 252 Ga.App. 751, 556 S.E.2d 517 (2001); *see also Kauka Farms, Inc. v. Scott*, 256 Ga. 642, 646, 352 S.E.2d 373 (1987) (holding that the "conduct which [the plaintiff] asserts as ... tortious interference with property right[s] ... is nothing more than allegations of breach of contract").

█ Furthermore, it is well settled that punitive damages are not available in breach of contract claims. *Trust Co. Bank v. C & S Trust Co.*, 260 Ga. 124, 126, 390 S.E.2d 589 (1990); *McDuffie v. Argroves*, 230 Ga.App. 723, 726, 497 S.E.2d 5 (1998). Although Plaintiff's prayer for relief requested an award of punitive damages, because the only remaining claim in this case is a claim for breach of insurance contract under O.C.G.A. § 33–4–6, Plaintiff is not entitled to recover punitive damages.

Thus, the Court GRANTS Defendants' Motion for Summary Judgment on Plaintiff's tortious interference with property rights claim—Count VI of the Amended Complaint—and on Plaintiff's request for punitive damages.

## II. Plaintiff's Motion To Amend

█ Pursuant to Federal Rule of Civil Procedure 15(a), after a responsive pleading has been filed, a party may amend her pleading only by leave of court or written consent of the adverse party. The Rule also provides, "leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). Even so, granting leave to amend is not automatic. *Faser v. Sears Roebuck & Co.*, 674 F.2d 856, 860 (11th Cir.1982). A district court still has the power to manage the case, and leave will be denied if the amendment is offered: (1) after undue delay, in bad faith, or with a dilatory motive, (2) when the amendment would be futile, or (3) when the amendment would cause undue delay or prejudice. *Nolin v. Douglas County*, 903 F.2d 1546, 1550 (11th Cir. 1990).

█ Plaintiff's Original Complaint asserted a claim for breach of contract. Then, Count V of the First Amended Complaint asserted a claim for a breach of the covenants of good faith and fair dealing; however, it appeared that Plaintiff abandoned her breach of contract claim in the first amendment. Now Plaintiff asserts that she intended Count V to be a claim against Defendants for breach of insurance contract under O.C.G.A. § 33–4–6. Plaintiff requests leave of Court to amend the complaint a second time to clarify that Count V is a claim for breach of contract under that Code section.

Because the Original Complaint contained a breach of insurance contract claim, and because Defendants concede in their brief that "Plaintiff ha[s] a viable ... breach of contract action to recover benefits and for a penalty and attorney fees pursuant to O.C.G.A. § 33–4–6" (Defs.' Br. Supp. Mot. for Summ. J. at 42), it appears that Defendants were on notice that Plaintiff could pursue a breach of insurance contract claim. In fact, the parties have conducted discovery on the merits of this breach of contract claim. The Court therefore finds that allowing the amendment will facilitate disposition of this action and will not unduly prejudice Defendants. Accordingly, the Court GRANTS Plaintiff's Second Motion To Amend Complaint [72–1]. However, before the Court allows the breach of insurance contract claim to proceed to trial, Defendants should have the opportunity to litigate and brief the issues related to this claim. Be-

cause the Court finds that additional briefing would be an efficient use of judicial resources, the Court will allow Defendants to file a motion for summary judgment on Plaintiff's breach of insurance contract claim if they desire to do so. If Defendants wish to file a motion for summary judgment, the motion must be filed within thirty (30) days from the entry of this Order.

## CONCLUSION

For the foregoing reasons, Plaintiff's Second Motion To Amend Complaint [72-1] and Defendants' Motion for Leave To File Supplement to Reply Memorandum [76-1] are hereby **GRANTED**. Defendants' Motion for Summary Judgment [63-1] is hereby **GRANTED in part and DENIED in part**. Defendants are entitled to summary judgment on Counts I–IV and VII of Plaintiff's First Amended Complaint. Because the Court allows Plaintiff to amend the complaint to assert a new Count V, Defendants have thirty (30) days to file a motion for summary judgment on the amended Count V. If Defendants do not file a motion for summary judgment, then the parties shall file a consolidated pretrial order within sixty (60) days from the entry of this Order.

## ORDER DENYING RECONSIDERATION

Now before the Court for consideration are Plaintiff's Motion for Reconsideration [81-1]; Defendants' Motion for Partial Summary Judgment [83-1]; Plaintiff's Motion for Oral Argument on the Pending Motions [84-1]; and Plaintiff's Motions for Status Conference [92-1], to Lift Stay on Discovery [92-2], to Authorize Four Months of Discovery [92-3], and to Establish a Date Certain for Trial [92-4]. After reviewing the record and the parties'

briefs, the Court enters the following Order.

As a preliminary matter, the Court finds that the parties have adequately briefed the issues and that oral argument is not required. Accordingly, Plaintiff's Motion for Oral Argument on the Pending Motions [84-1] is hereby **DENIED**.

## I. BACKGROUND

The following facts are undisputed. In 1985, Plaintiff purchased a disability income policy from Provident Life & Accident Insurance Company ("Provident"), through Provident's agent, John Lagana. Provident Policy No. 6–334–657160 became effective on June 16, 1985, and was amended on June 1, 1989. The policy provided benefits in the event of a covered residual or total disability. Among the terms in the policy was an "Entire Contract" provision: "This policy with the application and attached papers is the entire contract between you and us. No change in the policy will be effective until approved by one of our officers. This approval must be noted on or attached to this policy. No agent may change this policy or waive any of its provisions." (Disability Income Policy at 13 (Pl.'s Resp. to Defs.' [First] Mot. for Summ. J., Ex. 1).)

In early 1996, Plaintiff submitted a claim for disability benefits based on depression and job burnout she suffered in her position as a "Human Resources Consultant." Provident paid Plaintiff disability benefits from November 1995 through March 1997. After an investigation, Provident decided that independent medical examinations ("IMEs") of Plaintiff would be appropriate.[1] Based on the determinations of the doctors who conducted the IMEs of Plaintiff, Provident denied further disability benefits.[2] Plaintiff appealed the decision

---

1. For simplicity, the Court also refers to "independent medical examiners" as "IMEs."

2. Additional evidence surrounding the termination of Plaintiff's benefits is discussed *infra* part II.C.2.

and demanded that her benefits be resumed. Thereafter, Plaintiff filed this lawsuit against Provident and its parent company, Provident Companies, Inc.[3]

The Original Complaint alleged claims for breach of contract, attorney's fees and penalties for bad faith denial of insurance claim under O.C.G.A. § 33–4–6 (Supp. 2002), tort damages under O.C.G.A. § 51–12–6 (2001), and punitive damages under O.C.G.A. § 51–12–5.1 (2001). After the addition of new counsel, Plaintiff amended the complaint to abandon all of the original claims and to allege the following claims: violation of the Georgia Racketeer Influenced and Corrupt Organizations Act ("RICO"), O.C.G.A. § 16–14–4(a)–(c) (1999) (Counts I–III); fraud and deceit (Count IV); breach of covenants of good faith and fair dealing (Count V); tortious breach of contract (Count VI);[4] and tortious interference with property rights (Count VII).

By an Order dated July 29, 2002 (the "July 29 Order"), this Court granted Defendants' Motion for Summary Judgment as to Counts I–IV and VII of Plaintiff's First Amended Complaint. However, the Court allowed Plaintiff to amend the Complaint to assert a new Count V alleging bad faith breach of insurance contract under O.C.G.A. § 33–4–6. Plaintiff has moved for reconsideration of the July 29 Order, and Defendants have moved for summary judgment on the new Count V.

## II. DISCUSSION

### A. Plaintiff's Notice of Supplemental Evidence

As a threshold issue, Plaintiff has submitted three additional items of evidence in support of all of her pending motions.

These items are: (1) a videotape and transcript of *Dateline: Benefit of the Doubt* (NBC television broadcast, Oct. 13, 2002); (2) a videotape and transcript of *60 Minutes: Not the Best Policy?* (CBS television broadcast, Nov. 17, 2002); and (3) a copy of *Hangarter v. The Paul Revere Life Insurance Co.,* 236 F.Supp.2d 1069 (N.D.Cal. 2002). Plaintiff alleges that these items constitute new evidence relating to Defendants' alleged illegal practices. Plaintiff also argues that these items show that the Court should reopen discovery.

 The Court has reviewed these materials and agrees with Defendants that they constitute inadmissible hearsay. Thus, to the extent that Plaintiff submits these items for the Court's analysis in Plaintiff's Motion for Reconsideration or Defendants' Motion for Partial Summary Judgment, the Court cannot rely on them. Evidence is hearsay if it: (1) is made by an out-of-court declarant; and (2) is submitted for the truth of the matter asserted. Fed.R.Evid. 801(c). Hearsay evidence is generally inadmissible. Fed.R.Evid. 802. Further, a court may not consider inadmissible hearsay in deciding a motion for summary judgment. *Macuba v. Deboer,* 193 F.3d 1316, 1322 (11th Cir.1999). First, the declarants on the videotapes have not been deposed, nor have they provided affidavits or other statements to this Court. Second, Plaintiff argues that "[t]he individuals who appeared in the submitted programs ... clearly establish that Defendant had a company wide program to terminate claims such as the claim made by Plaintiff." (Pl.'s Mot. for Status Conference at 2). Because the individuals on the videotapes state that Defendants had such a policy, the Court concludes that Plaintiff's

---

3. Provident Companies, Inc., is now known as UnumProvident Corporation.

4. The Court did not allow Plaintiff to assert this claim because Georgia law does not recognize a claim for tortious interference with contract. (Order of Nov. 30, 1999, at 14–15.)

purpose for submitting these materials is to prove the truth of the matter asserted. Consequently, these materials are "classic hearsay" and will not be considered by the Court for purposes of the pending motions. *See Kallstrom v. City of Columbus,* 165 F.Supp.2d 686, 692–93 (S.D.Ohio 2001) (striking transcript of ABC television broadcast on hearsay grounds).[5]

■ The court order is similarly inadmissible. First, its relevance is questionable because the case does not relate to Defendants' denial of this Plaintiff's benefits.[6] Second, the Eleventh Circuit has made clear that findings made by other courts constitute inadmissible hearsay. *U.S. Steel, LLC, v. Tieco, Inc.,* 261 F.3d 1275, 1287 (11th Cir.2001); *United States v. Jones,* 29 F.3d 1549, 1553–54 (11th Cir. 1994). Accordingly, the Court will not consider the videotapes or the court order as substantive evidence for purposes of the pending Motion for Reconsideration and Motion for Partial Summary Judgment.

■ Though it is unclear, Plaintiff also appears to rely on the videotapes and court order to argue that the Court should reopen discovery.[7] Plaintiff writes, "[a]n objective review of the *Hangarter* order, the 60 Minutes program and the previously submitted Dateline program shows that there is substantial evidence of the Defendant's illegal conduct now available." (Pl's Mot. for Status Conference at 7.) In conjunction with her Motion for Reconsideration, Plaintiff asserts that Defendants should be required to answer all previous

discovery; she also requests four months within which to gather evidence.

This case was filed in 1998; discovery was extended once until June 4, 1999. On May 13, 1999, the Court stayed discovery pending its ruling on Plaintiff's Motion to Amend. The Court entered that ruling, and discovery resumed, on November 30, 1999. Various discovery disputes and submissions in the record reflect that the parties engaged in discovery activities into at least January 2001. Finally, the Court entered an Order directing the parties to file a pre-trial order no later than May 31, 2002. Then, after the Court granted Plaintiff's motion to amend the complaint to add the new Count V, a new discovery period began, which ended on January 2, 2003. As this history reflects, the parties have had ample time within which to conduct discovery. While the videotapes and court order suggest some of the evidence that Plaintiff may have wished to acquire, there is no showing that this or similar evidence was not in existence at the time the parties were engaged in discovery. Moreover, Plaintiff's request to reopen discovery centers on her fraud and RICO claims; as discussed below, the Court will not reconsider its grant of summary judgment in favor of Defendants on those claims. Thus, reopening discovery is unnecessary. Accordingly, Plaintiff's Motions to Lift Stay on Discovery [92–2] and to Authorize Four Months of Discovery [92–3] are hereby **DENIED.**

---

5. Further, neither the videotapes nor the court order reference Plaintiff at all. It seems that their only relevance may be in impermissible propensity reasoning. *See* Fed.R.Evid. 404(b).

6. The case also hinged on issues of state law, such as whether the plaintiff was totally disabled under California law, and whether defendants had violated California's Unfair

Competition Act. Here, however, Georgia law provides the rules of decision. *LaTorre v. Conn. Mut. Life Ins. Co.,* 38 F.3d 538, 540 (11th Cir.1994).

7. Plaintiff asks the Court to "lift the stay on discovery." While discovery is closed, there is no stay on discovery. Accordingly, the Court treats Plaintiff's motion as a request to reopen discovery.

## B. Plaintiff's Motion for Reconsideration

▨ Plaintiff has moved the Court to reconsider its July 29 Order granting summary judgment to Defendants on the fraud and RICO claims. A motion for reconsideration should not be used to reiterate arguments that have been made previously, but "should be reserved for certain limited situations, namely the discovery of new evidence, an intervening development or change in the law, or the need to correct a clear error or prevent a manifest injustice." *Deerskin Trading Post, Inc. v. United Parcel Serv. of Am., Inc.*, 972 F.Supp. 665, 674 (N.D.Ga.1997). Moreover, a motion for reconsideration may not be used to offer new legal theories or evidence that could have been presented in a previously filed motion or response, unless a reason is given for failing to raise the issue at an earlier stage in the litigation. *Escareno v. Noltina Crucible and Refractory Corp.*, 172 F.R.D. 517, 519 (N.D.Ga.1994) (citing *O'Neal v. Kennamer*, 958 F.2d 1044, 1047 (11th Cir.1992)).

▨ In the July 29 Order, this Court granted summary judgment on Plaintiff's fraud and RICO claims primarily because of the merger clause contained in the contract. As the Order explained, where a party elects to affirm a contract, she is thereby bound by its terms and is estopped from asserting reliance on pre-contractual representations. *First Data POS, Inc. v. Willis*, 546 S.E.2d 781, 784–85, 273 Ga. 792 (2001); *Pennington v. Braxley*, 480 S.E.2d 357, 359, 224 Ga.App. 344 (1997). The Order also considered and rejected Plaintiff's argument that false representations became part of the contract. *E.g., Woodhull Corp. v. Saibaba Corp.*, 507 S.E.2d 493, 497, 234 Ga.App. 707 (1998). In rejecting that argument, the Court reasoned that Plaintiff failed to describe how any pre-contractual representations were incorporated into the contract, nor did she show evidence that any other representations in the contract were fraudulent or misleading. (Order of July 29, 2002, at 9.)

In her Motion for Reconsideration, Plaintiff urges that: (1) the Court overlooked material facts showing that Defendants never intended to perform the contract; and (2) the Court failed to consider or address Plaintiff's argument that the contract's merger clause was void as against public policy. Defendants respond that Plaintiff's Motion merely repeats arguments advanced in her original response and do not merit reconsideration.

### 1. Promise without intent to perform

▨ Plaintiff contends that Defendants entered into the insurance contract without ever intending to perform it. She argues that the merger clause does not bar her fraud and RICO claims because the misrepresentations she relied upon were part of the disability policy itself. In support of her Motion for Reconsideration, she argues that the Court overlooked evidence that mandated a different result. As described above, however, motions for reconsideration should not be used to reiterate arguments previously made. *Deerskin Trading Post*, 972 F.Supp. at 674. Plaintiff made this argument in her Brief in Response to Defendants' [First] Motion for Summary Judgment, at 32–34. Indeed, the Court considered the arguments of both parties on this issue and reviewed the evidence before it prior to concluding that summary judgment was proper. (*See* Order of July 29, 2002, at ————.) Plaintiff emphasizes evidence that was before the Court, but points to no new evidence that would change the outcome. This portion of the Motion merely restates arguments already considered by the Court, and does not illustrate any manifest injustice that would warrant reconsidera-

tion. Thus, the Court declines to reconsider its conclusion that there is no issue of material fact whether Defendants are liable under the fraud and RICO claims.

*2. Whether merger clause is void*

■ Plaintiff also argues that the Court should reconsider its July 29 Order because it failed to consider or address her argument that the merger clause is void as against public policy. In her Response, Plaintiff contended that a merger clause is void as against public policy where it is used as an instrument to execute and perpetrate fraud in violation of express prohibitions in regulatory laws enacted to protect the public against such deceptive practices. (Pl.'s Resp. to Defs.' [First] Mot. for Summ. J. at 39 [hereinafter "Pl.'s Resp. [First]"].) Plaintiff relied on *Meason v. Gilbert*, 226 S.E.2d 49, 236 Ga. 862 (1976), and reasoned that the Insurance Code is a regulatory statute for the protection of the public against fraud and deceptive practices, and so a merger clause may not be used to shield against liability for violating the Code. (Pl.'s Resp. [First] at 40.) Defendants replied by distinguishing *Gilbert*; the Court considered these arguments but did not explain its conclusions on this issue. Thus, while the Court finds that there is no reason to grant reconsideration of this issue, it explains its reasoning in an effort to be thorough.

In *Meason*, the plaintiff claimed that he had been induced to purchase securities by fraudulent oral misrepresentations by the defendant's agent. 226 S.E.2d at 50. The purchaser sued for rescission of the contract under the Georgia Securities Act. *Id.* The trial court granted summary judgment to the defendant because of a merger clause in the purchase contract that specified that the purchaser was not relying on any statements other than those in the prospectus, and that the contract and prospectus constituted the entire agreement between the parties. *Id.* The Georgia Su-

preme Court concluded that the clause was evidence relevant to whether representations had been made to the plaintiff outside of the contract and prospectus. *Id.* The court also rejected the defendant-seller's contention that the clause estopped the buyer from raising any oral misrepresentations. *Id.* In so doing, the court reasoned that misuse of such an integration clause might itself be the type of artifice prohibited by the securities statute. *Id.* Finally, the court held that plaintiff's allegations of misrepresentations were sufficient to create an issue of material fact when viewed against the integration clause, precluding summary judgment. *Id.* at 51.

■ *Meason* is distinguishable from this case because there, the issue was before the court on a suit for rescission; whereas here, Plaintiff has elected to affirm the contract. *See Hall v. Coram Healthcare Corp.*, 157 F.3d 1286, 1289 (11th Cir.1998) (distinguishing *Meason* on this ground); *GCA Strategic Inv. Fund, Ltd. v. Joseph Charles & Assocs., Inc.*, 537 S.E.2d 677, 681, 245 Ga.App. 460 (2000) (same). Although Plaintiff points out that the plaintiff in *Meason* also sued the officers and directors of the corporation for damages, the *Meason* court considered the effect of the merger clause in the context of a rescission analysis. Aside from *Meason's* factual distinctions, the case appears to be an anomaly when viewed against the strong rule in Georgia that when a party elects to affirm a contract, that party is bound by its terms, including merger clauses. *Keller v. Henderson*, 545 S.E.2d 705, 707, 248 Ga.App. 526 (2001); *GCA Strategic*, 537 S.E.2d at 680–81. Indeed, merger clauses have been consistently upheld in Georgia as a matter of law. *See generally First Data POS, Inc. v. Willis*, 273 Ga. 792, 546 S.E.2d 781 (merger clause precluded RICO claims arising out of stock

transaction and allegations that oral misrepresentations were made to induce plaintiff into entering written contract). Thus, Plaintiff's argument that the merger clause here is void as against public policy must fail. Accordingly, Plaintiff's Motion for Reconsideration [81–1] is hereby **DENIED**. Further, because Plaintiff's request for a status conference also hinges on the Court's decision not to reconsider its previous Order, Plaintiff's Motion for Status Conference [92–1] is hereby **DENIED**.

### C. Motion for Summary Judgment

Defendant UnumProvident has moved for summary judgment on the grounds that it was not a party to the contract. Both Defendants have moved for partial summary judgment on Plaintiff's claim for bad faith breach of insurance contract under O.C.G.A. § 33–4–6. Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the non-movant. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### 1. *UnumProvident's Status*

UnumProvident contends that it is entitled to summary judgment because it was not a party to the insurance contract that is in dispute. Plaintiff responds that UnumProvident is Provident's successor in interest and is thus liable for Provident's breach of contract.

■ "As a general rule, an action on a contract . . . shall be brought in the name of the party in whom the legal interest in the contract is vested, and against the party who made it in person or by agent." O.C.G.A. § 9–2–20 (1982). Georgia recognizes corporate identity as separate from that of its principals or owners, provided that corporate forms are maintained. *Yukon Partners, Inc. v. The Lodge Keeper Group, Inc.,* 258 Ga.App. 1, 572 S.E.2d 647, 651 (2002); *see Boafo v. Hosp. Corp. of Am.,* 338 S.E.2d 477, 479, 177 Ga.App. 75 (1985) (parent corporation not liable for subsidiary's contracts); *see also Wady v. Provident Life & Accident Ins. Co. of Am.,* 216 F.Supp.2d 1060 (C.D.Cal.2002) (rejecting claim that UnumProvident was liable for Provident's alleged breach of contract under alter ego theory). Nevertheless, a corporation's successor-in-interest may be liable for the original corporation's contracts. *Pet Care Prof'l Ctr., Inc. v. BellSouth Adver. & Pub. Corp.,* 464 S.E.2d 249, 251, 219 Ga.App. 117 (1995).

■ Defendants explain that UnumProvident is the name by which "Provident Companies, Inc." is now known, and that it is the corporate parent of Provident, the contracting party. (*See* Roth Aff. ¶ 12 (Defs.' Resp. to Pl.'s Mot. to Compel, Ex. 3).) Further, the language of the contract does not refer to Provident Companies, Inc. as a party. For example, the policy provides that the "words 'we,' 'our' and 'us' mean Provident Life and Accident Insurance Company." (Disability Income Policy at 1.) And "[t]his policy is a legal contract

between you and us." (*Id.*) Applying O.C.G.A. § 9–2–20, this action against UnumProvident cannot survive because neither it nor its predecessor was a party to the contract.

Plaintiff argues that she has alleged that UnumProvident is Provident Life's successor in interest, and submits that this allegation must be accepted as true. At the summary judgment stage, however, Plaintiff may not rely on bare allegations, but must present affirmative evidence showing the presence of a disputed issue of material fact. *Anderson v. Liberty Lobby*, 477 U.S. at 257, 106 S.Ct. 2505. While the Court must view the evidence in the light most favorable to Plaintiff, she has failed to support her successor-in-interest theory with any affirmative evidence. Even if UnumProvident might be a successor-in-interest to Provident Companies, Inc., the Court finds no evidence that UnumProvident is a successor-in-interest to Provident. Thus, Plaintiff has not met her burden on summary judgment and the Court finds that there is no material issue of fact whether UnumProvident is liable under the insurance contract. Accordingly, Defendants' Motion for Partial Summary Judgment [83–1] is hereby **GRANTED** as to UnumProvident.

### 2. Bad Faith Breach of Insurance Contract

 Plaintiff's remaining claims are for breach of contract and penalties for bad faith. Defendant Provident concedes, and the Court agrees, that whether Plaintiff was disabled within the policy's meaning is an issue of fact for the jury. Thus, Provident moves for partial summary judgment on Plaintiff's claim for bad faith penalties under O.C.G.A. § 33–4–6. That statute provides in relevant part,

(a) In the event of a loss which is covered by a policy of insurance and the refusal of the insurer to pay the same within 60 days after a demand has been made by the holder of the policy and a finding has been made that such refusal was in bad faith, the insurer shall be liable to pay such holder, in addition to the loss, not more than 50 percent of the liability of the insurer for the loss or $5,000.00, whichever is greater, and all reasonable attorney's fees for the prosecution of the action against the insurer.

*Id.* Under this provision, " '[b]ad faith' is shown by evidence that, under the terms of the policy ... the insurer had no 'good cause' for resisting and delaying payment." *Ga. Int'l Life Ins. Co. v. Harden*, 280 S.E.2d 863, 866, 158 Ga.App. 450 (1981). A bad faith refusal to pay means "a frivolous and unfounded denial of liability." *Progressive Cas. Ins. Co. v. Avery*, 302 S.E.2d 605, 607, 165 Ga.App. 703 (1983) (internal quotations omitted). Where there is a disputed question of fact whether an insurer had "a reasonable and probable cause for refusing to pay a claim," bad faith penalties are not available under § 33–4–6. *Shaffer v. State Farm Mut. Auto. Ins. Co.*, 540 S.E.2d 227, 228, 246 Ga.App. 244 (2000).

To support a cause of action under O.C.G.A. § 33–4–6, the insured bears the burden of proving that the refusal to pay the claim was made in bad faith. A defense going far enough to show reasonable and probable cause for making ... [the refusal] would vindicate the good faith of the company as effectually as would a complete defense to the action. Penalties for bad faith are not authorized where the insurance company has any reasonable ground to contest the claim and where there is a disputed question of fact.

*Moon v. Mercury Ins. Co. of Ga.*, 559 S.E.2d 532, 534–35, 253 Ga.App. 506 (2002) (quoting *S. Fire & Cas. Ins. Co. v. N.W. Ga. Bank*, 434 S.E.2d 729, 730, 209 Ga.

App. 867 (1993)). Thus, bad faith penalties are not warranted where the insurance company has reasonable grounds to contest the claim and there is a disputed question of fact regarding coverage. *Id.* Here, Defendant Provident does not contest that there are genuine issues of material fact whether Plaintiff was disabled within the meaning of the policy. Rather, Provident argues that it is this very question of fact that precludes a finding of bad faith as a matter of law. Plaintiff responds that she has provided sufficient evidence of bad faith for the issue to go to a jury. In particular, Plaintiff argues that Provident's reliance on its IMEs was a pretextual way to justify a decision it had already made, that is, to terminate Plaintiff's benefits. In summary, then, the Court must determine whether, viewing the evidence in the light most favorable to Plaintiff, the insurance company had reasonable grounds to contest the claim.

 Normally, the advice of an IME "provides a reasonable basis for an insurer's denial of a claim" as a matter of law. *Haezebrouck v. State Farm Mut. Auto. Ins. Co.,* 455 S.E.2d 842, 844–45, 216 Ga. App. 809 (1995); *see Neal v. Superior Ins. Co.,* 432 S.E.2d 253, 254, 208 Ga.App. 827 (1993) (insurer's reliance on advice of licensed physician was reasonable as a matter of law). However, where an insurer relies on a recommendation of an IME that is "patently wrong and the facts are timely brought to the insurer's attention, an IME would not provide a reasonable basis for the denial of a claim." *Wallace v. State Farm Fire & Cas. Co.,* 539 S.E.2d 509, 511 n. 6, 247 Ga.App. 95 (2000). Alternatively, if an IME's determination were "a mere pretext for an insurer's unwarranted prior decision to terminate benefits, such IME determination would not

constitute reasonable and probable cause for the termination of benefits . . . ." *Id.*

In *Haezebrouck,* for example, the plaintiff sued her insurance company, alleging bad faith breach of insurance contract for the insurer's failure to pay for certain medical devices that the plaintiff's doctor had recommended following a car accident. 455 S.E.2d at 843. The insurance company forwarded the plaintiff's claims to two IMEs, both of whom concluded that the devices were not medically necessary. *Id.* at 844. While the court found that there was a fact issue whether the plaintiff's claims should have been covered under the contract, it held that, as a matter of law, bad faith penalties were not available to the plaintiff. *Id.* at 844–45. The court emphasized that an insurer's reliance on the advice of an IME is reasonable as a matter of law unless the advice is patently erroneous. *Id.* In reasoning that the advice given was not patently erroneous, the court noted that the IMEs included the medical bases for their conclusions. *Id.* at 845.

In contrast, where an insurer does not provide evidence of an IME in support of its denial of a claim, the issue of bad faith penalties may be for the jury.[8] *See Colonial Life & Acc. Ins. Co. v. McClain,* 253 S.E.2d 745, 746, 243 Ga. 263 (1979) (finding of bad faith is barred where "a defense raises a reasonable question of law or a reasonable issue of fact even though not accepted by the trial court or jury"); *Stegall v. Guardian Life Ins. Co. of Am.,* 171 Ga.App. 576, 577, 320 S.E.2d 575 (1984) (holding bad faith was question for jury). In *Stegall,* for example, the plaintiff sued his disability insurer for breach of contract and bad faith penalties. *Id.* at 575, 320 S.E.2d 575. The Georgia Court of Appeals

---

**8.** Plaintiff cites no cases, nor does the Court find any, that provide an example of circumstances in which a court held that an insurer's reliance on an IME was patently unreasonable or pretextual.

reversed the trial court's grant of summary judgment to the insurer, holding that fact issues existed whether the insured was covered and whether the denial of coverage was in bad faith. *Id.* at 576, 320 S.E.2d 575. In support of its motion, the insurer had presented evidence that the insured returned to work following an hospitalization, showing that he was not totally disabled. *Id.* at 575–76, 320 S.E.2d 575. However, the plaintiff had provided an affidavit from his doctor stating that he was indeed totally disabled. *Id.* at 576, 320 S.E.2d 575. On that record, the court of appeals concluded that the issue of bad faith was for the jury. *Id.*

Here, Provident has brought forth evidence showing that it relied on the advice of two IMEs in denying Plaintiff's claim.[9] After paying Plaintiff total disability benefits under the insurance contract for approximately one year, Defendant's employee, Sharon Haas, learned that Plaintiff was attending graduate school at the University of Georgia for the purpose of obtaining a graduate degree. (Haas Aff. ¶ 11 (Defs.' [First] Mot. for Summ. J., Ex. 1).) Ms. Haas discussed Plaintiff's schoolwork with Plaintiff in a telephone conversation, during which Plaintiff reported that though she had difficulty with new material, she was making mostly A's. (*Id.*; PLA000327 (Defs.' [First] Mot. for Summ. J., Ex. 2).) Next, Provident conducted a clinical review of Plaintiff's file to determine whether an independent medical examination would be necessary (Haas Aff. ¶¶ 12–13.) This review indicated an IME would be appropriate, and Provident scheduled IMEs for Plaintiff with a psychiatrist and a psychologist. (*Id.* ¶ 14;

PLA000378.) Both of the IMEs concluded that Plaintiff's current diagnosis did not support disability status. (Haas Aff. ¶¶ 15–17, PLA000482, 513–38.) Provident decided to deny further benefits, but advised Plaintiff that it would consider any additional information she wished to offer. (Haas Aff. ¶ 17; PLA 000526–27.) Thereafter, Plaintiff's attending physician wrote to protest the claim decision, emphasizing that his earlier diagnosis of "Major Depression, Chronic, Severe, Complicated" remained unchanged. (Haas Aff. ¶ 18; PLA000594.) Further, he noted that he saw numerous inconsistencies and errors in the IMEs' reports. (Haas Aff. ¶ 18; PLA000594.) Provident responded by requesting that Plaintiff's physician provide full details as to the inconsistencies and errors; thereafter, Provident forwarded that information to the IMEs and asked whether the information changed the IMEs' earlier conclusions. (Haas Aff. ¶¶ 19–20.) Ultimately, the IMEs concluded that the information provided by Plaintiff's physician did not alter their original conclusions. (Haas Aff. ¶¶ 21–22; PLA000612, 613, 628, 631.) Later, Plaintiff demanded resumption of benefits and sent Provident new reports from psychological and medical examiners. (Haas Aff. ¶ 24, PLA000658–90.) Provident forwarded these reports to its IMEs, again asking whether the information changed the IMEs' earlier determinations. (Haas Aff. ¶ 24.) The IMEs responded that their earlier decisions were unchanged, and they further specified what they viewed as particular weaknesses in the Plaintiff's examiners' methods and conclusions. (PLA000696.) Finally, Provident's inter-

9. Plaintiff repeatedly asserts her position that information in Defendants' claim file constitutes inadmissible hearsay. (Pl.'s Resp. Opposing Defs.' Mot. for Partial Summ. J. at 1.) However, for purposes of this motion for partial summary judgment, the information is not

submitted for the truth of the matter asserted-generally, that Plaintiff was not disabled-but to explain the basis for Defendants' decision to terminated Plaintiff's benefits and show a lack of bad faith. Accordingly, the Court will consider the materials in the claim file.

nal psychologist conducted a clinical review of Plaintiff's new reports and the IMEs' reviews, and advised that the earlier claim decision-denial of benefits-should not be reversed. (PLA0006999.)

Applying Georgia law, Provident has met its burden on summary judgment. In Georgia, the advice of an IME normally "provides a reasonable basis for an insurer's denial of a claim." *Haezebrouck v. State Farm Mut. Auto. Ins. Co.*, 455 S.E.2d at 844–45. Had Provident relied merely on its knowledge that Plaintiff was taking graduate courses at a university in terminating her benefits, it would be in the position of the insurer in *Stegall* that was not entitled to summary judgment. Here, however, it has provided evidence showing not only that it relied on the advice of IMEs in making its determination, but that it challenged the IMEs' conclusions by asking the IMEs to consider new reports provided by Plaintiff's experts. Like the IMEs in *Haezebrouck*, the IMEs here provided their medical bases for their conclusions, so that the reports were not patently unreasonable. Thus, the burden shifts to Plaintiff, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists whether Provident's reliance on its IMEs was patently unreasonable or pretextual.[10]

Plaintiff argues, "[w]e have alleged and the Dateline–NBC transcript, attached as Exhibit E, provides further confirmation that the Defendant has undertaken a poli-cy of denying claims for monetary reasons." (Pl.'s Resp. to Defs.' Partial Mot. for Summ. J. at 4.) As described above, the Dateline program is not admissible and the Court will not consider it; further, even though the Court views the facts in the light most favorable to the non-movant, that party must go beyond the pleadings to carry her burden on summary judgment.

As support for Plaintiff's argument that Provident's reliance on its IMEs was pretextual, Plaintiff states in her affidavit that Tim Peace, one of Provident's employees, failed to return her telephone calls. (Worsham Aff. ¶ 6 (Pl.'s Resp. to Defs.' Mot. for Partial Summ. J., Ex. C).) However, Plaintiff also states that she communicated with Provident by mail. (Worsham Aff. ¶ 5.) As additional evidence, Plaintiff points to materials that her counsel has obtained from other cases pending against the Defendants across the country. These materials are: (1) an internal memo from Provident's vice president stating that policies issued from the early- to mid–1980's were "poorly underwritten and underpriced"; (2) an internal memo from Provident's vice president of disability claims stating that certain claim improvement initiatives "are designed to move Provident from a claim payment to a claim management approach"; (3) Provident's 1996 individual disability claims performance objectives, which include a "net termination ratio" of 90%; and (4) a deposition of Provident's Medical Director, taken

---

10. Much of Plaintiff's evidence illustrates that there is a factual dispute whether Plaintiff was disabled within the meaning of the policy. (*See, e.g.,* Davis Aff. ¶¶ 7–8 (Pl.'s Resp. [First], Ex. 8) (criticizing Defendants' IME and opining Plaintiff is totally disabled); Klein Aff. ¶ 5 (Pl.'s Resp. [First], Ex. 9) (Plaintiff is totally disabled); Conley Aff. ¶ 3 (Pl.'s Resp. [First], Ex. 10) (referencing psychiatrist's opinion indicating "she cannot function in her previous work capacity"); Worsham

Aff. ¶ 6 (Pl.'s Resp. [First], Ex. 11) (unable to perform the "substantial and material duties" of her occupation); Myerson Aff. ¶ 5 (Pl.'s Resp. [First], Ex. 13) (same); Steinberg Aff. ¶ 4 (Pl.'s Resp. [First], Ex. 14) (same).) However, Defendant agrees that whether Plaintiff is disabled is a fact question for the jury. The Court thus focuses on Plaintiff's evidence that Provident's reliance on the IMEs was patently unreasonable or pretextual.

for a different case. However, viewing the first three items in their entirety, none of them mentions the use of IMEs or sheds light on Provident's handling of Plaintiff's particular case. As for the fourth item, the Court questions the deposition's relevance because Dr. Feist was no longer employed at the time Plaintiff's benefits were terminated. (Feist Dep. at 15 (Pl.'s Resp. [First], Ex. 7).) Further, Plaintiff does not point to any references in the deposition testimony that relate to Plaintiff's claim or Provident's use of pretextual IMEs.

Plaintiff also argues that the evidence shows that Ms. Haas was not the only person involved in the decision to deny Plaintiff's benefits. John Lagana, a former selling agent for Provident, states in his affidavit that he received a letter from Provident Companies, Inc.'s Chairman, President, and CEO J. Harold Chandler, in response to a letter that Mr. Lagana wrote to protest the denial of Plaintiff's benefits. (Lagana Aff. ¶ 8 (Pl.'s Resp. [First], Ex. 12).) In the letter, Mr. Chandler states "I personally support the conclusions we have reached based on the information we have reviewed." Plaintiff also states that unspecified portions of the Haas affidavit and Provident's claim file support her argument.

Plaintiff's evidence shows that there are genuine issues of material fact whether she is covered by her insurance contract. The affidavits of her various doctors, opining that she is unable to perform the duties of her occupation, are in contrast to the information in Provident's claim file. However, none of the admissible evidence provided by Plaintiff raises a fact issue whether Provident's reliance on its IMEs was "patently unreasonable" or a "mere pretext." Even if Plaintiff's evidence shows that Provident was operating under a policy of terminating claims, Plaintiff has shown no evidence that Provident's use of

the IMEs in Plaintiff's case was pretextual. Indeed, Plaintiff has not presented evidence showing that Provident's use of *any* IMEs was pretextual. The circumstances of this particular case underscore that Provident's denial was not "frivolous" or "unfounded." *Progressive Cas. Ins. Co. v. Avery*, 302 S.E.2d at 607. First, unlike the Plaintiffs in *Stegall*, Provident utilized IMEs. Like *Haezebrouck*, Provident's IMEs provided the medical bases for their conclusions. Second, Provident went beyond *Haezebrouck* by consistently testing its IMEs' conclusions with Plaintiff's information. Further, under Georgia law, the absence of bad faith is buttressed by the existence of a genuine issue of material fact whether Defendants owe Plaintiff coverage. Thus, summary judgment is warranted in favor of Defendants on Plaintiff's claim under O.C.G.A. § 33-4-6.

### III. Conclusion

Plaintiff's Motion for Reconsideration [81–1] is hereby **DENIED**; Defendants' Motion for Partial Summary Judgment [83–1] is hereby **GRANTED**; Plaintiff's Motion for Oral Argument on the Pending Motions [84–1] is hereby **DENIED**; Plaintiff's Motion for Status Conference [92–1] is hereby DENIED; Plaintiff's Motion to Lift Stay on Discovery [92–2] is hereby DENIED; Plaintiff's Motion to Authorize Four Months of Discovery [92–3] is hereby **DENIED**; and Plaintiff's Motion to Establish a Date Certain for Trial [92–4] is hereby **GRANTED**. The parties are **ORDERED** to submit a consolidated pre-trial order within thirty days of the date of this Order. This case shall be placed on the trial calendar for the week of March 17, 2002. The parties are also **ORDERED** to participate in mediation within twenty days of the entry of this Order. The parties shall confer in an effort to agree upon a mediator, and if unable to agree,

notify the Court and a mediator will be appointed.