A01A1682. MOON v. MERCURY INSURANCE COMPANY OF GEORGIA.
(559 SE2d 532)

BARNES, Judge.

Cynthia Ann Moon sued Mercury Insurance Company of Georgia for unpaid medical expenses resulting from an automobile collision in which she was a passenger, seeking special damages, bad faith penalties, attorney fees, and punitive damages. Mercury denied these expenses were covered under the auto insurance policy of Moon's father, contending that Moon had released her claim, that she was not a resident in her father's house, that she had no standing because she had assigned these benefits to a chiropractor, and that it was not liable for penalties.

The trial court granted summary judgment to Mercury, holding that Moon's general release of the tortfeasors and their insurance company also released Mercury from her claim for medical expenses. While we hold that the trial court erred in concluding that Moon's general release operates also to release Mercury on the special damages claim, we affirm the summary judgment on Moon's bad faith claim. Further, while Moon had no standing to assert the claim for special damages, having assigned her cause of action to her treating chiropractor, she is entitled under OCGA § 9-11-17 to a reasonable time within which to substitute the real party in interest, or to have the doctor reconvey the cause of action to her.

1. Moon's general release does not bar her claim against Mercury. "Only those parties *named* in the release will be discharged by that instrument," and "named" means "identified either by proper name or such other description as leaves no question of the identity of the party released." *Lackey v. McDowell*, 262 Ga. 185, 186, n. 3 (415 SE2d 902) (1992). However, claims against an insurer for uninsured or underinsured motorist coverage may be extinguished by a

general release even if the insurer was not specifically identified in it. *Rodgers v. St. Paul Fire &c. Ins. Co.*, 228 Ga. App. 499, 500-501 (1) (492 SE2d 268) (1997). Those claims are derivative in nature, requiring the injured party to establish the legal liability of the uninsured or underinsured motorist, which he cannot do if he has released that motorist from liability. *Cook v. State Farm &c. Ins. Co.*, 237 Ga. App. 400, 402 (514 SE2d 48) (1999).

Moon's claim against Mercury for medical expenses, however, is not derivative, but arises from the contract of insurance. "The settlement agreement and the release executed pursuant thereto dealt only with tort liability, and does not bar these actions on contract liabilities." *Southern Guaranty Ins. Co. v. Robinson*, 132 Ga. App. 121, 124 (207 SE2d 599) (1974). Mercury's liability does not hinge on whether Moon can establish the legal liability of the tortfeasor with whom she settled her personal injury claim, and therefore the trial court erred in granting summary judgment to Mercury on this ground.

2. Mercury also argued that it was entitled to summary judgment on Moon's claim for benefits and bad faith failure to pay, because the evidence shows as a matter of law that it did not owe the benefits and had reasonable and probable cause to deny the claim. Moon asserts that a genuine issue exists regarding this issue.

> To support a cause of action under OCGA § 33-4-6, the insured bears the burden of proving that the refusal to pay the claim was made in bad faith. A defense going far enough to show reasonable and probable cause for making it[ ] would vindicate the good faith of the company as effectually as would a complete defense to the action. Penalties for bad faith are not authorized where the insurance company has any reasonable ground to contest the claim *and where there is a disputed question of fact.*

(Citations and punctuation omitted; emphasis supplied.) *Southern Fire &c. Ins. Co. v. Northwest Ga. Bank*, 209 Ga. App. 867-868 (2) (434 SE2d 729) (1993).

The issue here is not only whether Moon was in fact a member of her father's household at the time of the automobile collision. The issue with respect to bad faith penalties is, rather, whether Mercury had "a reasonable and probable cause for refusing to pay a claim." (Punctuation and footnote omitted.) *Shaffer v. State Farm &c. Ins. Co.*, 246 Ga. App. 244, 245 (540 SE2d 227) (2000). If Mercury had a reasonable basis for believing that Moon was not a member of her father's household at the time of the collision, the fact that she ultimately may be able to prove otherwise "or that the investigation was

508

not flawless is of no consequence." *Southern Fire &c. Ins. Co.*, supra, 209 Ga. App. at 868 (2).

Here, the policyholder made previous representations to Mercury that Moon did not live with him. When Willie T. Moon originally applied for an insurance policy with Mercury in 1994, he did not indicate that anyone other than himself and his wife resided in his household. When a routine investigation disclosed that his daughter Cynthia was living with him, Mercury added her to the policy as a covered driver. But when a second routine check in July 1996 revealed that Cynthia's license was suspended, Mercury did not renew Willie Moon's policy. Shortly thereafter, Moon sent a new application indicating that Cynthia had moved out of his household, and the policy was rewritten to cover Mr. and Mrs. Moon only. Mercury confirmed through a telephone inquiry in August 1996 that Cynthia was not living with the insured. The collision in issue here occurred in April 1997.

Mercury also relied on a statement its adjuster took over the phone from someone identified as Moon's sister, who said Moon had been living with her at the time of the collision. In her affidavit accompanying a transcript of the phone call, the adjuster detailed the circumstances under which she took the statement. The adjuster called a number given to her as the sister's home telephone, and a person identifying herself as the sister's daughter gave the adjuster a number identified as the sister's work telephone. The adjuster called that number and verified that the sister worked there but was "in a meeting" at that time. The adjuster called back later and took a detailed, recorded statement in which a person identifying herself as Moon's sister gave extensive personal information, including her correct address, her relationship to Moon, and further details regarding Moon's living arrangements. This person mentioned that Moon had returned to her parents' house to help care for her mother, but stated that this was after the collision, information that was consistent with information previously obtained from the policyholder in connection with his application and policy reissue.

Moon's sister later disavowed the statement, testifying in her deposition that her mother had died two days before the statement date and she knew she had not talked to anyone at that time. Moon, her sister, and her father consistently testified in their depositions that Moon had returned home to care for her ailing mother before she died, before the accident.

A factual dispute certainly exists as to whether Moon resided in her father's household when she was in this car accident, and thus whether she is entitled to coverage under the medical payment provision of her father's insurance policy. The existence of this factual dispute constitutes Mercury's complete defense to Moon's bad faith

claim. "[I]t is the very fact that certain factual issues regarding the merits of a claim are in genuine conflict that causes there to be no conflict, as a matter of law, whether an insurance company had reasonable grounds to contest a particular claim." *Rice v. State Farm Fire &c. Co.*, 208 Ga. App. 166, 169 (1) (430 SE2d 75) (1993). Therefore, the trial court did not err in granting summary judgment to Mercury on Moon's bad faith claim.

3. Mercury argued below that Moon lacks standing to bring suit because she assigned the benefits to her treating chiropractor. Moon responded first that nothing in the record validates that she signed the alleged assignment. A review of the record, however, shows that Moon admitted in her response to Mercury's motion for summary judgment that "[o]n August 27, 1997, Ms. Moon signed a document with Dr. Mark Anthony entitled 'Assignment, Lien and Authorization, Insurance Benefits and Attorney.' (Exh. 'A')." Exhibit A of Moon's brief in opposition to Mercury's motion for summary judgment is the document at issue here, and therefore Moon's argument — that nothing in the record validates her signature — fails. See *Wood v. Brunswick Pulp &c. Co.*, 119 Ga. App. 880, 881-882 (169 SE2d 403) (1969).

Moon then argues that the document shows she had not assigned her benefits, but merely agreed to do so upon demand by the doctor. "[A]n assignment of health care benefits under an insurance policy to a health care provider divests the assignor/insured of the right to bring an action against the insurer to collect benefits under the insurance policy." *Allianz Life Ins. Co. &c. v. Riedl*, 264 Ga. 395 (444 SE2d 736) (1994). The document in this case provides:

> In the event my insurance company obligated to make payments to me upon the charges made by this office for their services refuses to make such payments, *upon demand by me or this office*, I hereby assign and transfer to this office any and all causes of action that I might have or that might exist in my favor against such company. . . .

(Emphasis supplied.) Moon argues that the "me" in the phrase "upon demand by me or this office" refers to the treating chiropractor and that no evidence shows that the doctor demanded that Moon assign her claim to him. A review of the full document, however, shows that "me" in this second paragraph refers to Moon, not to the doctor. The document begins, "I hereby authorize and direct you, my insurance company, and/or my attorney to pay directly to Dr. Anthony such sums as may be due and owing this office for services rendered me." The third, fourth, and fifth paragraphs all begin with "I," and the document is signed by Moon, not by the doctor. The phrase "upon demand by me or this office" more logically modifies the phrase "[i]n

the event my insurance company . . . refuses to make such payments." In other words, Moon assigned to the chiropractor any cause of action that arose from the insurance company's refusal to pay charges following a demand to the company for payment by Moon or the chiropractor.

Further, the language "I hereby assign and transfer" indicates Moon's present intent to assign to the chiropractor any cause of action arising from the insurer's failure to pay on demand. *Southern Mut. Life Ins. Assn. v. Durdin*, 132 Ga. 495, 498 (64 SE 264) (1909); compare *Piedmont Southern Life Ins. Co. v. Gunter*, 108 Ga. App. 236, 240 (2) (132 SE2d 527) (1963).

Mercury essentially contends that Moon is not the real party in interest here. "The real party in interest is the person, who, by the substantive governing law, has the right sought to be enforced." (Citation and punctuation omitted.) *Allianz Life Ins. Co.*, supra, 264 Ga. at 398 (3). If an action is not being prosecuted by the real party in interest, before dismissing the case the trial court should allow a reasonable time after objection to allow the real party in interest to ratify, join, or be substituted in the action. OCGA § 9-11-17 (a); *Jones v. State Farm &c. Ins. Co.*, 228 Ga. App. 347, 349-350 (2) (491 SE2d 830) (1997). In *Jones*, we held that the doctor to whom the insured had assigned her contractual benefits had reassigned those benefits back to the insured, and therefore the insured was the real party in interest.

Because summary judgment is not the proper vehicle to decide a real party in interest objection, *Dept. of Human Resources v. Holland*, 263 Ga. 885, 887 (2) (440 SE2d 9) (1994), we reverse the trial court's grant of summary judgment to Mercury on Moon's special damages claim.

*Judgment affirmed in part and reversed in part. Smith, P. J., and Phipps, J., concur.*

DECIDED JANUARY 29, 2002.

*Scott & Wells, Donald T. Wells, Jr.*, for appellant.
*Manko & Lyle, J. Stephen Manko*, for appellee.