A06A0173. NORTH METRO DIRECTORIES PUBLISHING, LLC v. COTTON STATES MUTUAL INSURANCE COMPANY.
(631 SE2d 726)

RUFFIN, Chief Judge.

Cotton States Mutual Insurance Company ("Cotton States") issued a liability insurance policy to North Metro Directories Publishing, LLC ("North Metro"). The issue on appeal is whether Cotton States has a duty to defend North Metro against a complaint for damages brought by one of its customers. The trial court found Cotton States had no duty to defend and granted summary judgment to the insurer. On appeal, North Metro contends the trial court erred in

construing the insurance policy so as to deny coverage. North Metro also argues that the reservation of rights letter submitted by Cotton States was insufficient as a matter of law. Although we agree that the trial court erred in construing the contract, we disagree that the reservation of rights letter was insufficient. Accordingly, we affirm in part and reverse in part.

In reviewing a trial court's grant of summary judgment, we review the record de novo, construing all evidence in favor of the nonmoving party.[1] So viewed, the complaint reveals that North Metro publishes telephone directories and provides a "call-tracking" service, which allows customers to track and monitor incoming calls. Mike Trotter General Contractor, Inc. d/b/a The Trotter Company ("Trotter"), entered into a contract with North Metro in which North Metro "sold Trotter an advertising package." Under the contract, "all incoming calls placed to Trotter's assigned number in response to the ads were to be tracked by [North Metro] for monitoring purposes and immediately routed directly to Trotter's main contact telephone number."

North Metro provided similar services for one of Trotter's competitors, Aqua Guard. According to Trotter, in September 2004, North Metro began routing calls placed to Trotter to its competitor, Aqua Guard. Upon receiving calls from existing and potential Trotter customers, Aqua Guard representatives allegedly informed them that it "was 'now handling all of Trotter's calls' because Aqua Guard was the 'better company' and because Trotter 'was not paying its bills.' "

Trotter filed suit against both North Metro and Aqua Guard, alleging claims for breach of contract, tortious interference with contractual relations, tortious interference with business relations, slander, violation of Georgia's Uniform Deceptive Trade Practices Act, and conspiracy. North Metro apparently notified Cotton States of the pending suit as Cotton States issued a letter to North Metro, reserving its right to contest coverage. Cotton States then filed a declaratory judgment action, seeking judicial determination of whether the insurance policy provided coverage for the underlying cause of action. Cotton States moved for summary judgment, and the trial court granted the motion.

1. On appeal, North Metro contends that the trial court erred in finding that the policy provides no coverage for the claims alleged by Trotter in the underlying complaint. Specifically, North Metro contends that Cotton States has the duty to defend it against Trotter's claims.

---

[1] See *Pilz v. Monticello Ins. Co.*, 267 Ga. App. 370, 371 (599 SE2d 220) (2004).

"Whether an insurer is obligated to defend an action against its insured is determined by the contract."[2] " '[T]he issue is not whether the insured is *actually liable* to the plaintiffs; the issue is whether a claim has been asserted which falls within the policy coverage and which the insurer has a duty to defend.' "[3] In resolving this issue, we look first to the policy language. "An insurance policy is governed by the ordinary rules of contract construction," and the cardinal rule of contract construction is to ascertain the parties' intent.[4] When the policy terms are clear and unambiguous, we look to the contract alone to determine that intent.[5] However, where policy language is ambiguous, we strictly construe any such ambiguity against the insurer as the drafter of the contract.[6] "An ambiguity is duplicity, indistinctness, or an uncertainty of meaning or expression, and a word or phrase is ambiguous when it is of uncertain meaning and may be fairly understood in more ways than one."[7]

The pertinent provision of North Metro's business owner's liability insurance policy provides that Cotton States "will pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'personal injury' " which is that "caused by an offense . . . [a]rising out of the conduct of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you." The trial court concluded that the claims against North Metro did not fall under this provision, reasoning that because North Metro was providing advertising services to Trotter, all of Trotter's claims arise out of such advertising. We disagree with this interpretation.

First, the service North Metro provided its clients — including Trotter — was more than advertising. North Metro also tracked and routed calls as part of its business. Although this service might be considered marketing, we find there is, at the very least, an ambiguity as to whether this could reasonably be considered advertising. Second, even if North Metro's conduct could reasonably be considered mere advertising, we still find the policy ambiguous. According to the trial court's interpretation, the phrase "excluding advertising . . . done by or for you" essentially excludes coverage for any company that engages in advertising as its business. However, read in its

---

[2] (Punctuation omitted.) *Yeomans & Assoc. Agency v. Bowen Tree Surgeons*, 274 Ga. App. 738, 741 (1) (a) (618 SE2d 673) (2005).

[3] (Emphasis in original.) Id. at 742.

[4] *Park 'N Go of Ga. v. United States Fidelity & Guaranty Co.*, 266 Ga. 787, 791 (471 SE2d 500) (1996).

[5] See id.

[6] See *Yeomans*, supra at 743.

[7] (Punctuation omitted.) *Federated Mut. Ins. Co. v. Ownbey Enterprises*, 278 Ga. App. 1, 5 (627 SE2d 917) (2006).

entirety, the provision could be read as referring solely to the advertising of North Metro's business — not to North Metro's activities in "advertising, publishing, broadcasting or telecasting" for others. "Since the language is susceptible to at least two interpretations, it is ambiguous."[8] Accordingly, we apply the rules of contract construction, one of which is that an ambiguity in the contract will be construed strictly against Cotton States as the drafter of the policy.[9] Moreover, if we construed the contract as urged by Cotton States, it would render meaningless coverage for "personal injury" for any company primarily involved in advertising, publishing, or broadcasting. Such interpretation would also run counter to the rules of contract construction.[10] Under these circumstances, the trial court erred in concluding that the policy at issue provided no coverage for personal injury.[11]

As we find that the allegations in Trotter's complaint constitute a "personal injury" under the policy, we must determine next whether the claim falls under a policy exclusion.[12] According to Cotton States, the following exclusion applies: "This insurance does not apply to . . . '[p]ersonal injury . . . [a]rising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.'" Here, the complaint does not allege that North Metro either made the allegedly slanderous statements or directed Aqua Guard employees to do so. Although the conspiracy count in the complaint suggests that North Metro and Aqua Guard were acting in concert,[13] it does not necessarily follow that North Metro's conduct falls within the exclusion. We construe insurance policies in favor of

---

[8] Id. at 6.

[9] See *Connell v. Guarantee Trust &c. Ins. Co.*, 246 Ga. App. 467, 470 (1) (541 SE2d 403) (2000).

[10] See id. (contracts should be construed to uphold every part rather than rendering any part meaningless).

[11] See id. at 470-471; *Ownbey Enterprises*, supra.

[12] North Metro also asserted that the underlying conduct could constitute an "advertising injury" under the policy. However, the policy provision for "advertising injury" unambiguously applies only to "offense[s] committed . . . [i]n the course of advertising [North Metro's] goods, products or services." As the conduct alleged did not involve advertising of North Metro's services, we agree with the trial court that this provision provides no coverage. *S & T Timber, Inc. v. Southern Gen. Ins. Co.*, 198 Ga. App. 18, 19 (400 SE2d 379) (1990) ("An insurance company may fix the terms of its policies as it wishes, provided they are not contrary to law, and it may insure against certain risks and exclude others.") (punctuation omitted). Because we conclude that coverage under this provision does not apply, we need not address whether the policy exclusion relating to advertising injury applies.

[13] See *Premier/Ga. Mgmt. Co. v. Realty Mgmt. Corp.*, 272 Ga. App. 780, 788 (3) (c) (613 SE2d 112) (2005) ("'A conspiracy is a combination of two or more persons to accomplish an unlawful end or to accomplish a lawful end by unlawful means. To recover damages for a civil conspiracy claim, a plaintiff must show that two or more persons, acting in concert, engaged in conduct that constitutes a tort.'").

the insured and against the insurance company, and exclusions in policies are strictly construed.[14] Under the circumstances of this case, a question of fact remains as to whether North Metro made or directed Aqua Guard to make the slanderous statements. Accordingly, summary judgment on this basis is inappropriate.[15]

2. North Metro contends that, because Cotton States' "reservation of rights letter was woefully deficient," the insurer should be estopped from denying coverage. According to North Metro, Cotton States was required to provide specific, unambiguous reasons for denying coverage. As this Court recently stated, however, "[n]othing . . . requires that the insurance company list each and every basis for contesting coverage in the reservation-of-rights letter before the company may raise such in [a] declaratory judgment action."[16] Under these circumstances, the trial court did not err in rejecting North Metro's contention in this regard.

*Judgment affirmed in part and reversed in part. Smith, P. J., and Phipps, J., concur.*

DECIDED MAY 19, 2006 — CERT. APPLIED FOR.

*Gambrell & Stolz, Linda A. Klein, Steven R. Press,* for appellant.
*Downey & Cleveland, Alan J. Gibson, Joseph C. Parker, Jonathan C. Jones,* for appellee.

---

[14] See *State Farm &c. Co. v. Goodman,* 259 Ga. App. 62, 63 (2) (576 SE2d 49) (2002).

[15] See id. at 64-67 (3).

[16] *Govt. Employees Ins. Co. v. Progressive Cas. Ins. Co.,* 275 Ga. App. 872, 876 (3) (622 SE2d 92) (2005).