## A07A0201. CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON v. RUCKER CONSTRUCTION, INC.
### (648 SE2d 170)

MIKELL, Judge.

Certain Underwriters at Lloyd's of London ("Lloyd's") insured a 1990 John Deere bulldozer owned by Rucker Construction, Inc. On March 12, 2004, Jack Brent Rucker, the owner and vice-president of Rucker Construction, left the bulldozer in a fenced pasture with the key in the ignition. That night, three men stole the machine, drove it one quarter of a mile into a pond, and submerged it, causing extensive damage. Rucker Construction made a claim against its policy. Lloyd's denied the claim based on the policy's "Locked Vehicle Warranty" (the "warranty"), which states:

> We will not pay for any loss or damage caused by, resulting from, contributed to or aggravated by theft, including attempted theft, from "any one vehicle" covered or "any one owned vehicle" covered unless the covered property is contained in a fully enclosed and securely locked body or compartment and the theft results from forcible entry, evidenced by visible marks.

After Lloyd's denied its claim, Rucker Construction filed a breach of contract action, seeking to recover damages and a bad faith penalty. Lloyd's moved for summary judgment, arguing that the theft was not covered by the policy because Rucker Construction failed to secure

---

[16] (Citation and punctuation omitted.) *In the Interest of K. S.*, 271 Ga. App. 891, 894 (611 SE2d 150) (2005).

the bulldozer "in a fully enclosed and securely locked body or compartment" and there were no visible marks of forced entry, given that the key was left in the ignition. In opposing the motion, Rucker Construction argued that the "warranty" was ambiguous because it excluded coverage due to theft *from* 'any one vehicle' covered," but did not exclude coverage due to theft *of* a vehicle, and because a bulldozer was not defined as a vehicle in the policy. The trial court denied Lloyd's motion but certified its order for immediate review. We denied Lloyd's application for interlocutory review.

The case proceeded to trial. Using a special verdict form, the jury found that the bulldozer was not covered by the "warranty" and awarded Rucker Construction $36,300 in damages and $9,000 in a bad faith penalty. Lloyd's appeals the judgment entered on the verdict, enumerating as error the denial of its motions for summary judgment, for a directed verdict, and for judgment notwithstanding the verdict (j.n.o.v.), as well as the denial of its objections to the special verdict form. We affirm for the reasons set forth below.

1. Lloyd's challenge to the order denying its motion for summary judgment is rendered moot by the subsequent entry of verdict and judgment. "After verdict and judgment, it is too late to review a judgment denying a summary judgment, for that judgment becomes moot when the court reviews the evidence upon the trial of the case."[1] Stated differently, "where a motion for summary judgment is overruled on an issue and the case proceeds to trial *and the evidence at the trial authorizes the verdict (judgment)* on that issue, any error in overruling the motion for summary judgment is harmless."[2] We will, however, consider Lloyd's contention that the trial court erred in denying its motions for directed verdict and j.n.o.v., which raised the same arguments as those asserted in the motion for summary judgment.[3]

2. The standard of appellate review of a trial court's denial of a motion for a directed verdict or of a motion for j.n.o.v. is the "any evidence test," and the evidence is construed most favorably toward the party opposing the motion.[4] "The question before this court is not whether the verdict and judgment of the trial court were merely

---

[1] (Citations and punctuation omitted.) *Lovell v. Rea*, 278 Ga. App. 740, 741-742 (1) (629 SE2d 459) (2006).

[2] (Citations and punctuation omitted; emphasis in original.) *Weir v. Kirby Constr. Co.*, 213 Ga. App. 832, 836 (4) (446 SE2d 186) (1994).

[3] See *Grange Mut. Cas. Co. v. DeMoonie*, 227 Ga. App. 812 (2) (490 SE2d 451) (1997).

[4] *Professional Consulting Svcs. of Ga. v. Ibrahim*, 206 Ga. App. 663, 665 (1) (426 SE2d 376) (1992).

authorized, but is whether a contrary judgment was demanded."[5] So viewed, the evidence adduced at trial shows that on March 12, 2004, Rucker transported the bulldozer to a farm owned by Walter Dockery to perform a job. Rucker unloaded the bulldozer behind a 54-inch fence in a pasture where livestock were kept. Before Rucker could begin the job, however, his son called for help on their front-end loader. Rucker left the bulldozer on the farm with the key in the ignition and took off in his pickup truck to help his son. Rucker was unable to return to the farm that day. The next morning, Dockery notified Rucker that the bulldozer was gone. Rucker came to the farm, and he and Dockery followed the bulldozer's track marks. The thieves drove the machine through a fence and submerged it in a pond. Rucker admitted that there were no marks of forced entry or any indication that someone had tried to "hot wire" the machine.

Rucker testified that the adjuster, Thomas Nolan, told him that the claim was denied because the bulldozer had been left in an insecure area with the key in the ignition. Rucker testified that he left the bulldozer behind a fence and a gate; that he has never taken any type of shed or portable fence with him to secure the machine; and that the only way to keep a bulldozer "securely locked" is if it has a cab, which his did not. Rucker testified that he understood the "theft from" language in the warranty to mean that if something was stolen out of the bulldozer, the theft would not be covered, but if the bulldozer was stolen, the theft would be covered. Rucker also testified to his understanding of the difference between a bulldozer and a vehicle. He testified that he could not drive the bulldozer on the highway because the tread has two-and-a-half inch cleats and would tear up the road; that a tag cannot be bought for it; that the state does not issue a certificate of title for it; and that the tax office calls it a piece of heavy equipment. Further, Rucker pointed out that the bulldozer was listed along with his other equipment on the "Contractors Equipment Declarations" page and that the word "vehicle" did not appear on that page. Rucker also testified that he received an estimate of $36,300 to fix the machine, for which he submitted a proof of loss to Lloyd's. The bulldozer was insured for $40,000. Finally, on the issue of bad faith, Rucker testified that he lost several jobs due to Lloyd's denial of his claim.

Nolan, an independent adjuster, testified that the policy at issue was a commercial inland marine policy used to provide coverage on equipment and other things of value not insurable under "a State

---

[5] (Citation and punctuation omitted.) *Singleton v. Terry*, 262 Ga. App. 151, 155 (3) (584 SE2d 613) (2003) (directed verdict). Accord *Douglas v. Bigley*, 278 Ga. App. 117, 118 (628 SE2d 199) (2006) (j.n.o.v.).

Farm or an Allstate policy." Nolan defined the "locked vehicle warranty" as an endorsement "that requires the insured to do his due diligence to protect the vehicle from theft or from damages that may be caused by a theft." According to Nolan, "there must be some visible marks on the vehicle which would show that the thieves had to forcibly steal or damage [it]." He testified that the endorsement was fairly common. Nolan investigated the claim and learned that the persons who damaged the bulldozer would be charged with theft by taking. Nolan also testified that Rucker could not support his claim that a bulldozer was not a vehicle under Georgia law. Finally, he testified that although the language "theft from a vehicle" means "theft of component parts of a vehicle; [such as the] motor, transmission," the entire endorsement must be read to understand its meaning. According to Nolan, there would be coverage for the bulldozer if there were some signs of forcible entry, meaning that someone had jammed a screwdriver into the ignition, or if the thieves had admitted having a key.

A special verdict form was submitted to the jury over Lloyd's objection. The first question asked whether the plaintiff's bulldozer was either (a) a vehicle covered by the "warranty," or (b) contractor's equipment not covered by the "warranty." The jury checked the box next to (b), "contractor's equipment." Thus, as instructed by the form, the jury did not proceed to answer the next question, which asked whether the loss was caused by a theft "___ from the subject property [or] ___ of the subject property."

Lloyd's argues that this verdict cannot stand because the bulldozer was a vehicle as a matter of law, and the undisputed evidence demonstrated that Rucker Construction did not comply with the warranty. We disagree with the first assertion and find it unnecessary to reach the second.

It is true, as Lloyd's points out, that Georgia appellate courts have considered a tractor or a bulldozer to be a vehicle.[6] And Georgia law defines "vehicle" as "every device in, upon, or by which any person or property is or may be transported or drawn upon a highway, excepting devices used exclusively upon stationary rails or tracks."[7] Perhaps a bulldozer, broadly construed, fits this definition,[8] although in this case, there was evidence that the cleats would tear up the

---

[6] See *Hinton v. Interstate Guaranty Ins. Co.*, 267 Ga. 516, 519 (480 SE2d 842) (1997) (farm tractor used to tow a mobile home on a county road held to be a "motor vehicle" under uninsured motorist statute). See generally *Camp v. T. E. Cline, Inc.*, 141 Ga. App. 328, 329 (1) (233 SE2d 280) (1977) (referring to bulldozer as a vehicle).

[7] OCGA § 40-1-1 (75). See *Coker v. State*, 261 Ga. App. 646, 647 (2) (583 SE2d 498) (2003) (golf cart is a "vehicle" within the meaning of OCGA § 40-1-1 (75)).

[8] See *Hinton*, supra.

highway. But the question in this case is not whether a bulldozer may be considered a vehicle under Georgia law; the question is what the parties intended the term "vehicle" to mean in the "warranty."

"An insurance policy is simply a contract, the provisions of which should be construed as any other type of contract."[9] The cardinal rule of contract construction is to determine the intention of the parties.[10] Initially, construction of the contract is a question of law for the court.[11] When the terms of the contract are unambiguous, the court looks to the contract alone to find the parties' intent.[12] If the wording of a contract provision is ambiguous, however, the court must apply the rules of contract construction to resolve the ambiguity.[13] "Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury."[14] "An ambiguity is duplicity, indistinctness, an uncertainty of meaning of expression, and a word or phrase is ambiguous when it is of uncertain meaning and may be fairly understood in more ways than one."[15] "Where a term of a policy of insurance is susceptible to two or more constructions, even when such multiple constructions are all logical and reasonable, such term is ambiguous and will be strictly construed against the insurer as the drafter and in favor of the insured."[16] "Where the phrasing of the policy is so confusing that an average policyholder cannot make out the boundaries of coverage, the policy is genuinely ambiguous."[17]

The "warranty" in the case at bar is genuinely ambiguous. It states, in part, that the insurer will not pay for any damage caused by theft "from 'any one *vehicle*' covered . . . unless the *covered property* is contained in a fully enclosed and securely locked body or compartment." The policy describes the "property covered" as the "contractor's equipment" listed on the "equipment schedule." The bulldozer is listed on that schedule, and thus is "covered property" under the

---

[9] (Citation and punctuation omitted.) *Hunnicutt v. Southern Farm Bureau Life Ins. Co.*, 256 Ga. 611, 612 (4) (351 SE2d 638) (1987).

[10] *North Metro Directories Publishing v. Cotton States Mut. Ins. Co.*, 279 Ga. App. 492, 494 (1) (631 SE2d 726) (2006).

[11] *Woody's Steaks, LLC v. Pastoria*, 261 Ga. App. 815, 817 (1) (584 SE2d 41) (2003).

[12] *Park 'N Go of Ga. v. U. S. Fidelity & Guaranty Co.*, 266 Ga. 787, 791 (471 SE2d 500) (1996).

[13] *RLI Ins. Co. v. Highlands on Ponce*, 280 Ga. App. 798, 800 (1) (635 SE2d 168) (2006).

[14] (Citation omitted.) Id. at 800-801 (1).

[15] (Citations and punctuation omitted.) *Allstate Ins. Co. v. Grayes*, 216 Ga. App. 419, 422 (3) (454 SE2d 616) (1995).

[16] (Citations omitted.) *Ga. Farm &c. Ins. Co. v. Meyers*, 249 Ga. App. 322, 324 (548 SE2d 67) (2001). Accord *Padgett v. Ga. Farm &c. Ins. Co.*, 276 Ga. App. 796, 797 (625 SE2d 76) (2005); *North Metro Directories Publishing*, supra (ambiguity will be construed strictly against insurer as the drafter of the policy).

[17] (Citation omitted.) *Meyers*, supra.

"warranty." "Contractor's equipment" is defined as "machinery, equipment and tools of a mobile nature." The term "vehicle" is not defined in the policy; however, "self-propelled vehicles designed and used to carry mounted equipment" and "vehicles designed for highway use" are expressly excluded from the definition of "contractor's equipment." Under the policy, therefore, it appears that "vehicles" are not "covered property." Thus, the "warranty," excluding coverage for damage caused by theft "from 'any one *vehicle*' covered . . . unless the *covered property* is contained" in a locked body is ambiguous, because the policy defines equipment and vehicles differently. Accordingly, there is evidence to support the jury's finding that the bulldozer was contractor's equipment not covered by the warranty.

Furthermore, the adjuster admitted that "theft from a vehicle," as the warranty is worded, can be construed to mean theft of its component parts. If this is how the insurance adjuster understood it, certainly this is what a reasonable insured could expect it to mean. "[I]nsurance contracts are to be read in accordance with the reasonable expectations of the insured where possible."[18]

*Showers v. Allstate Ins. Co.*[19] illustrates an unambiguous theft exclusion. In that case, a customer of the insured left her watch in the insured's car, and the watch disappeared.[20] The customer sued the insured, who made a claim against her policy, which excluded coverage for

> theft (including attempt threat) . . . from any private passenger type automobile, station wagon, motorcycle, or motorscooter, occurring while such vehicle is unattended, unless the property is contained in a fully enclosed and securely locked body or compartment and theft results from forcible entry, evidenced by visible marks.[21]

Although the claim in *Showers* was not covered because the insured had not selected the correct coverage,[22] the language of the exclusion therein is strikingly similar to the "warranty" at issue. The "warranty" here, therefore, may be interpreted as excluding theft of personal property from the bulldozer, rather than theft of the bulldozer itself. If Lloyd's had wished to exclude theft *of* covered property, instead of theft from a "vehicle," Lloyd's could have done so. It did not.

---

[18] (Citation and punctuation omitted.) *Guaranty Nat. Ins. Co. v. Brock*, 222 Ga. App. 294, 297 (2) (474 SE2d 46) (1996).

[19] 136 Ga. App. 792 (222 SE2d 198) (1975).

[20] Id. at 794.

[21] (Punctuation omitted.) Id. at 796 (Evans, J., dissenting).

[22] Id. at 793.

The "warranty" is subject to multiple interpretations, and an ambiguity was created for jury resolution.

As the meaning of the term "vehicle" was ambiguous as used in the policy, the trial court did not err in submitting to the jury the question of whether the bulldozer was either a vehicle covered by the "warranty" or "contractor's equipment" that was not covered. We affirm the denial of Lloyd's motions for directed verdict and j.n.o.v. on this issue.

3. Lloyd's further contends that no evidence exists to support a finding that it acted in bad faith in denying the claim. Pursuant to OCGA § 33-4-6 (a), if the insurer refuses to pay a claim within 60 days after a demand is made and there is a finding that the refusal was in bad faith, the insurer shall be liable for a penalty. The question of bad faith is for the jury, and a judgment for a bad faith penalty will be affirmed if there is any evidence to support it, unless it can be said as a matter of law that the insurer had a reasonable defense which showed its good faith in denying coverage.[23]

In the case at bar, the evidence relevant to this issue shows that Rucker Construction filed a claim indicating that the loss was caused by "vandalism." Shortly thereafter, Nolan responded by letter stating that the "warranty" precluded coverage because the bulldozer had been left on unsecured property with the key in the ignition and when it was recovered, the "key was still in the ignition and in the on position." After receiving a response from Rucker's counsel, Nolan testified that he investigated the allegation that the loss resulted from "vandalism" and not from theft. Nolan learned that the perpetrators would be charged with theft by taking. He wrote Rucker's counsel a letter outlining his findings and requesting counsel to indicate which language in the "warranty" would not apply to the loss. Counsel responded by letter stating that the "locked vehicle portion of the policy would not apply because . . . the bulldozer is a piece of machinery or equipment, it is not a vehicle as defined under Georgia law." In subsequent correspondence, counsel enclosed the property tax bill for the equipment and the $36,300 repair estimate. Nolan continued to deny the claim, demanding case law showing that the use of the term "vehicle" in the "warranty" was inappropriate. Nolan also disputed the amount of the loss.

Based on this evidence, we cannot say as a matter of law that Lloyd's had a reasonable defense. Although counsel's statement that the bulldozer was not a vehicle as defined under Georgia law was not

---

[23] *First Financial Ins. Co. v. American Sandblasting Co.*, 223 Ga. App. 232, 233 (2) (477 SE2d 390) (1996); *St. Paul Fire &c. Ins. Co. v. Snitzer*, 183 Ga. App. 395, 397 (2) (358 SE2d 925) (1987).

necessarily correct,[24] the correspondence put Lloyd's on notice of the difficulty in construing the policy.[25] And contrary to Lloyd's argument in its reply brief, construction of the "warranty" did not present a novel question of law. Rather, the "warranty" was ambiguous to the extent that it could not be resolved by the application of the well-established rules of contract construction. "Any ambiguities in the contract are strictly construed against the insurer as drafter of the document, [and] *any exclusion from coverage sought to be invoked by the insurer is* likewise strictly construed."[26]

Finally, Lloyd's reliance on *Moon v. Mercury Ins. Co. of Ga.*[27] is misplaced. In that case, a factual dispute existed as to whether the plaintiff, who was injured in an automobile accident, resided in her father's household at the time of the collision. Such residency was a prerequisite to her recovery of unpaid medical expenses under her father's insurance policy.[28] There was evidence that the plaintiff had moved out of her father's home, and we held that the existence of the factual dispute constituted a complete defense to the plaintiff's bad faith claim, stating: "It is the very fact that certain factual issues regarding the merits of a claim are in genuine conflict that causes there to be no conflict, as a matter of law, whether an insurance company had reasonable grounds to contest a particular claim."[29] No ambiguity in the policy was alleged in *Moon*; rather, it involved a factual dispute. The same type of factual dispute does not exist in this case. The damage to the bulldozer and the cause of the damage were known at the outset. Thus, *Moon* is distinguishable, and it does not warrant reversal of the award of a bad faith penalty.

4. Finally, Lloyd's enumerates as error the denial of its objection to the special verdict form and the denial of its alternative motion for new trial on this ground. Lloyd's argues that the verdict form improperly asked the jury to determine whether the bulldozer was "contractor's equipment" or a "vehicle," since those terms are not mutually exclusive, and should have asked only whether or not the bulldozer was a vehicle. Based on our holding in Division 2, we disagree. In essence, the verdict form properly asked the jury to decipher the ambiguous "warranty"; i.e., whether it was a "vehicle" covered by the policy exclusion, or whether it was "contractor's equipment" and thus not subject to the exclusion. "[T]he form of a

---

[24] See *Hinton*, supra.

[25] See *First Financial Ins. Co.*, supra.

[26] (Citation and punctuation omitted; emphasis in original.) *Guaranty Nat. Ins. Co.*, supra at 296-297 (2). Accord *North Metro Directories Publishing*, supra.

[27] 253 Ga. App. 506 (559 SE2d 532) (2002).

[28] Id. at 508 (2).

[29] (Citation and punctuation omitted.) Id. at 508-509 (2).

verdict and the submission of a special verdict are within the discretion of the trial court, and, absent an abuse of that discretion, the court's choice will not be overturned."[30] In the instant case, there was no abuse of discretion.

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED JUNE 15, 2007.

*Fields, Howell, Athans & McLaughlin, Paul L. Fields, Jr., Kathleen M. Hurley,* for appellant.
*C. Jerome Adams,* for appellee.

---

[30] (Citation and footnote omitted.) *Govt. Employees Ins. Co. v. Progressive Cas. Ins. Co.,* 275 Ga. App. 872, 875 (2) (622 SE2d 92) (2005) (declaratory judgment action).