**FIRST DIVISION
BARNES, P. J.,
GOBEIL and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

***DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.***

**October 28, 2021**

# In the Court of Appeals of Georgia

A21A0954. SHARMA, INDIVIDUALLY AS SURVIVING SPOUSE OF AMIT SHARMA et al. v. CITY OF ALPHARETTA.

GOBEIL, Judge.

Arti Sharma, individually as the surviving spouse of Amit Sharma ("Amit"), and Rajendra Sharma, as administrator of the Amit's estate (collectively, the "Plaintiffs"), sued the City of Alpharetta ("the City") after Amit drowned at one of the City's public swimming pools. The trial court ultimately dismissed the complaint, finding that the City was immune from suit due to sovereign immunity. The Plaintiffs have appealed, arguing that the trial court erred in finding that an insurance policy purchased by the City did not amount to a waiver of sovereign immunity. For the reasons that follow, we affirm the order of the trial court.

On appeal, "[w]e review de novo a trial court's ruling on a motion to dismiss based on sovereign immunity grounds, which is a matter of law. Factual findings are sustained if there is evidence supporting them, and the burden of proof is on the party seeking the waiver of immunity." *Campbell v. Cirrus Ed., Inc.*, 355 Ga. App. 637, 641 (2) (845 SE2d 384) (2020) (citation and punctuation omitted).[1]

So viewed, the record in this case shows that on May 26, 2019, Amit visited a swimming pool at Wills Park in Alpharetta with his wife and child. The pool was owned and operated by the City, and the lifeguards on duty were employed by the City. Amit drowned at the pool at approximately 3 p.m. that afternoon.

In February 2020, the Plaintiffs sued the City, alleging (1) premises liability, (2) negligence in the lifeguards' supervision of the swimmers, and (3) negligence in the City's training and supervision of the lifeguards. As part of the required ante litem notice sent to the City, the Plaintiffs claimed that the City had waived its sovereign immunity "by the purchase of liability insurance up to the extent of the limits of such

---

[1] The trial court also denied the Plaintiffs' motion for summary judgment, which is likewise subject to de novo review. See *Essien v. CitiMortgage, Inc.*, 335 Ga. App. 727, 728 (781 SE2d 599) (2016).

liability insurance." The Plaintiffs later filed an amended complaint specifically reiterating this assertion.[2]

The City filed a motion to dismiss the Plaintiffs' complaint, asserting that it was immune from suit via sovereign immunity, and its purchase of liability insurance did not waive its immunity. The Plaintiffs filed a brief in opposition and a motion for summary judgment on the liability insurance issue.

At the time of Amit's drowning, the City was insured via a policy with State National Insurance Company, Inc. ("the policy"). Relevant to this appeal, under the heading "Sovereign Immunity and Damages Caps[,]" the policy contained the following clause:

> For any amount for which the insured would not be liable under applicable governmental or sovereign immunity but for the existence of this policy; and the issuance of this insurance shall not be deemed a waiver of any statutory immunities by or on behalf of any insured, nor of any statutory limits on the monetary amount of liability applicable to any insured were this policy not in effect; and as respects to any "claim", we expressly reserve any and all rights to deny liability by reason of

---

[2] The Plaintiffs also asserted in the trial court that the City waived its sovereign immunity by operating the pool as a source of revenue and adopting policies and procedures that created a ministerial duty that City employees failed to perform. However, the Plaintiffs later withdrew these arguments, and they do not make those arguments on appeal.

such immunity, and to assert the limitations as to the amount of liability as might be provided by law.

After hearing oral argument, a transcript of which does not appeal in the record, the trial court found that the above-stated clause was "clear and unambiguous[,]" and "the only reasonable interpretation of the subject clause is that the Parties intended to exclude from coverage all claims that would be subject to the defense of sovereign immunity." Thus, the court concluded that the City's purchase of this insurance policy did not waive its sovereign immunity. As such, the trial court denied the Plaintiffs' motion for summary judgment.

Later, after resolving other issues not related to this appeal, the trial court denied two motions filed by the Plaintiffs to reconsider this ruling, and the court granted the City's motion to dismiss based on sovereign immunity. This appeal followed.

Under the Georgia Constitution, municipalities are protected by sovereign immunity. Ga. Const. of 1983, Art. IX, Sec. II, Par. IX ("The General Assembly may waive the immunity of . . . municipalities . . . by law."). Municipal immunity is also enshrined via statute, which provides "it is the public policy of the State of Georgia that there is no waiver of the sovereign immunity of municipal corporations of the

4

state and such municipal corporations shall be immune from liability for damages." OCGA § 36-33-1 (a). Here, the parties do not contest that the actions of the City involve governmental functions to which sovereign immunity otherwise applies. Rather, they dispute whether the City's insurance coverage acts as a waiver.

Under Georgia law, waivers of sovereign immunity must come from the General Assembly. Ga. Const. of 1983, Art. IX, Sec. II, Par. IX. See also *CSX Transp., Inc. v. City of Garden City*, 277 Ga. 248, 250 (1) (588 SE2d 688) (2003) ("any waiver of sovereign immunity is a mere privilege, not a right, and the extension of that privilege is solely a matter of legislative grace") (citation and punctuation omitted). The General Assembly has declared:

> [a] municipal corporation shall not waive its immunity by the purchase of liability insurance . . . [3] unless the policy of insurance issued covers an occurrence for which the defense of sovereign immunity is available, and then only to the extent of the limits of such insurance policy.

OCGA § 36-33-1 (a). Courts are to specifically analyze the language of an insurance policy at issue to determine whether it "actually provide[s] coverage for a plaintiff's

---

[3] The statute also references the potential waiver of a municipal corporation's sovereign immunity based on the use of motor vehicles as recognized in OCGA §§ 33-24-51 and 36-92-2.

claims for damages." *Gatto v. City of Statesboro*, 353 Ga. App. 178, 184 (2) (834 SE2d 623) (2019), aff'd *Gatto v. City of Statesboro*, No. S20G0651, 2021 WL 2518620 (Ga. June 21, 2021).

> In Georgia, insurance is a matter of contract, and the parties to an insurance policy are bound by its plain and unambiguous terms. Thus, when faced with a conflict over coverage, a trial court must first determine, as a matter of law, whether the relevant policy language is ambiguous.

*Hays v. Ga. Farm Bureau Mut. Ins. Co.*, 314 Ga. App. 110, 111 (1) (722 SE2d 923) (2012) (citation and punctuation omitted). As this Court has explained, "[a]n ambiguity is duplicity, indistinctness, or an uncertainty of meaning or expression, and a word or phrase is ambiguous when it is of uncertain meaning and may be fairly understood in more ways than one." *North Metro Directories Publishing, LLC v. Cotton States Mut. Ins. Co.*, 279 Ga. App. 492, 494 (1) (631 SE2d 726) (2006) (citation and punctuation omitted).

> Where a term of a policy of insurance is susceptible to two or more reasonable constructions, and the resulting ambiguity cannot be resolved, the term will be strictly construed against the insurer as the drafter and in favor of the insured. If a policy exclusion is unambiguous, however, it must be given effect even if beneficial to the insurer and

6

detrimental to the insured. We will not strain to extend coverage where none was contracted or intended.

*Hays*, 314 Ga. App. at 112 (1) (citations and punctuation omitted). Whether ambiguity exists in a contract is a question of law for a trial court. *Samdperil v. Watson*, 359 Ga. App. 129, __ (1) (856 SE2d 768) (2021).

On appeal, the Plaintiffs argue that the trial court erred in finding that the contested clause in the policy clear and unambiguous. They contend that the term "statutory immunities" as used in the policy cannot unambiguously refer to sovereign immunity because sovereign immunity in Georgia is not a statutory creation, but rather is a constitutional one. According to the Plaintiffs, it is unclear what is meant by "statutory immunities" in the policy, hence, the policy must be construed liberally in favor of coverage, thereby operating to waive the City's sovereign immunity. We disagree.

Although the Plaintiffs are correct that municipal sovereign immunity is a constitutional doctrine in Georgia, it is also enshrined in our statutory law. See OCGA § 36-33-1. As explained above, our Constitution recognizes municipal immunity, but it explicitly requires an act of the General Assembly — a statute — to define any waivers of that immunity. Ga. Const. of 1983, Art. IX, Sec. II, Par. IX.

7

Thus, a reference to "statutory immunities" in a contract provision concerning a waiver of sovereign immunity is logical. Additionally, the context in which this term is used is relevant; the entire provision is labeled "Sovereign Immunity and Damages Caps[.]" See *Holmes v. Clear Channel Outdoor, Inc.*, 284 Ga. App. 474, 478 (2) (644 SE2d 311) (2007) (explaining that the "title to the section" provides context in interpreting contract). And the clause preceding the use of the term "statutory immunities" in the policy references the City's sovereign immunity. Thus, we conclude that, in context, the phrase "the issuance of this insurance shall not be deemed a waiver of any statutory immunities by or on behalf of" the City is unambiguously intended to preserve the City's municipal immunity where possible and to exclude the possibility that the purchase of the policy waived its municipal immunity.

Further, even without relying on the explicit non-waiver clause of this paragraph in the policy, we find that the provision *as a whole* is clearly intended to preserve the City's right to use the defense of sovereign immunity wherever legally permitted. Notably, reading the first and last clauses together results in the following: "For any amount for which the insured would not be liable under applicable governmental or sovereign immunity but for the existence of this policy; . . . we

8

expressly reserve any and all rights to deny liability by reason of such immunity . . . ." This Court can discern no reasonable alternative meaning to this provision other than the express intention to preserve the City's sovereign immunity where permissible under the law, and to prevent the purchase of the policy from expanding the City's liability in any way.[4] The paragraph clearly serves as a policy exclusion in instances where the City would be permitted to invoke the defense of sovereign immunity. Thus, there is no waiver of the City's sovereign immunity under this contract. See *Dugger v. Sprouse*, 257 Ga. 778, 779 (364 SE2d 275) (1988) ("where the plain terms of the policy provide that there is no coverage for the particular claim, the policy does not create a waiver of sovereign immunity as to that claim").

The Plaintiffs argue that a North Carolina Court of Appeals decision holding an identical insurance policy clause ambiguous should persuade us to reach the same conclusion here. We disagree. Specifically, in *Meinck v. City of Gastonia*, 263 NC App. 414, 419, 422 (III) (B) (823 SE2d 459) (2019), a panel of the North Carolina Court of Appeals found an insurance policy with an identical clause to be ambiguous and unclear as to "whether governmental immunity is waived under the policy." The

---

[4] We also note that the Plaintiffs have provided no alternative meaning for the provision.

9

Plaintiffs contend that because "three, separate, highly educated North Carolina Court of Appeals judges" found this language to be ambiguous, it cannot be said that an average person could read the policy in this case without confusion — effectively rendering it ambiguous as a matter of law. However, the decisions of courts in other jurisdictions do not bind this Court. *State Farm Fire & Cas. Co. v. Am. Hardware Mut. Ins. Co.*, 224 Ga. App. 789, 792 (3) (482 SE2d 714) (1997) ("the decisions of other jurisdictions are not binding on this Court and will be followed only when they are determined to be consistent with the orderly and fair development of the law of this state"). Although another court's decisions may be persuasive, they are only persuasive to the extent that the underlying law is identical or at least similar to that in Georgia; otherwise, the other court's reasoning would not be helpful to our purposes.[5]

---

[5] Additionally, it is not clear that the facts in *Meinck* are similar enough to the instant case for it to be persuasive. Although the insurance contract examined in *Meinck* contained a provision identical to the one now before us, the North Carolina Court of Appeals relied in part on the context of this provision within the full contract. See 263 NC App. at 419 (III) (B) (explaining that the provision at issue "is one of fourteen separate provisions contained in the endorsement entitled 'North Carolina Common Policy Conditions[,]'" and comparing it to other provisions within that endorsement).

The Plaintiffs do not provide any insight into the similarities or differences of North Carolina and Georgia municipal immunity. However, *Meinck* itself indicates that municipal immunity in North Carolina is a "common law concept[,]" 263 NC App. at 420 (III) (B), whereas in Georgia municipal immunity is a constitutional doctrine, which may be waived only by our General Assembly. Additionally, the North Carolina statute providing for waiver by municipalities via the purchase of insurance is affirmative — a city "is authorized to waive its immunity from civil liability in tort by the act of purchasing liability insurance." NCGSA § 160A-485 (a). This construct contrasts with the Georgia statute, which is expressed in the negative — a city "shall not waive its immunity by the purchase of liability insurance," except as provided by certain exceptions. OCGA § 36-33-1 (a). For these reasons, we conclude that the *Meinck* decision is not persuasive, and we decline to follow its reasoning. We thus affirm the trial court's order.

*Judgment affirmed. Barnes, P. J., and Markle, J., concur*.